236 So.2d 377 (1970)
KOEHRING COMPANY and Fidelity & Deposit Co. of Maryland, Appellants,
v.
HYDE CONSTRUCTION CO., Inc., Tom Virden, Receiver, Vardaman S. Dunn, Charles Clark & William H. Cox, Jr., d/b/a Cox, Dunn & Clark and United States Fidelity & Guaranty Co., Appellees.
No. 45752.
Supreme Court of Mississippi.
May 18, 1970.
Rehearing Denied July 2, 1970.
Tennyson & Britt, Jackson, for appellants.
Snow, Covington, Temple & Watts, Meridian, Butler, Snow, O'Mara, Stevens & Cannada, Cox & Dunn, Watkins & Eager, William E. Suddath, Jr., Jackson, for appellees.
*378 PATTERSON, Justice.
This is an appeal originated by Koehring Company and Fidelity & Deposit Company of Maryland, hereinafter refered to as Koehring, from a decree of the Chancery Court of the First Judicial District of Hinds County. The United States Fidelity & Guaranty Company, hereinafter referred to as U.S.F. & G., is a cross-appellant from the decree, thereby designating appellees as Hyde Construction Company, Inc., Tom Virden, receiver, and Cox, Dunn & Clark, attorneys at law, hereinafter referred to as Dunn.
The controversy stems from the aggrievement of Koehring over the appointment *379 of Tom Virden, the Chancery Clerk of Hinds County, as receiver, with the designated responsibility of accepting from it, as judgment debtor, payment of the judgment. The aggrievement of U.S.F. & G., a judgment creditor by assignment, is that the lower court erred in allowing an excessive and exorbitant attorneys' fee to Dunn, who represented Hyde Construction Company, and procured the original judgment against Koehring on April 8, 1964. That judgment was later appealed to this Court and was modified with the result being the amount of $406,396.89, with interest at 6% per annum from April 8, 1964, until payment. The decree of June 18, 1969, from which the present appeal is taken, comprised the sum of $533,047.90, the aggregate of the original judgment plus interest to the date of the later decree. The adjudicatory portion of the decree following the court's finding relating to parties and jurisdictional features is:
IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
1. That the claim of Vardaman S. Dunn, Charles Clark and William H. Cox, Jr., d/b/a Cox, Dunn & Clark, be and the same is hereby allowed as a first lien and claim upon the said judgment and upon the proceeds thereof, superior and paramount to the claims of all other parties, to be paid and secured first out of the proceeds resulting from said judgment, in the following amounts:
(a) A sum equal to 50% of the gross proceeds of the said judgment, including accumulated interest to the date of its payment, or the sum of $300,000.00, whichever sum is the greater, plus interest at the rate of 6% per annum on whichever sum be payable, calculated from the date of this decree to the date of distribution; plus
(b) Expenses incurred or paid in the amount of $43,237.61 plus interest at the rate of 6% per annum from and after the date of this decree; and
2. That the claimant United States Fidelity & Guaranty Company receive the balance of the proceeds of said judgment after first deducting the fee and expenses allowed to said attorneys and after deducting any other cost or expense items hereafter accruing and allowed by a Court of competent jurisdiction as and for a proper charge against said proceeds; and
3. That all claims and potential claims against the said judgment and the proceeds thereof by all other parties be and the same are hereby rejected and dismissed with prejudice; and
4. That upon payment of the amount of said judgment plus accrued interest into the registry of this Court or into the hands of Tom Virden, the Receiver appointed by this Court to receive the same, or upon collection of the proceeds of said judgment by this Court's Receiver, the Koehring Company and its surety, the Fidelity & Deposit Company of Maryland, judgment debtors, their successors and assigns, shall be thereby automatically and fully discharged from the judgment debt and from any and all further liability upon or under said judgment and from the claims of all parties to the proceeds thereof, all without any responsibility on the part of the said judgment debtors, or either of them, for the distribution or disposition of said proceeds after such payment or collection; and
5. That Tom Virden, Receiver, be and he is hereby directed to receive and collect the proceeds of such judgment whenever he shall cease to be prohibited from so doing on account of any injunctive order of any Court of competent jurisdiction, and to strictly account to this Court therefor, and to disburse the same pursuant to this and the further orders, if any, of this Court, not inconsistent herewith, and to take receipts for such *380 disbursements and to execute appropriate satisfactions of the said judgment; and
6. That the Receiver take no action hereunder toward the collection or enforcement of said judgment pending dissolution of the injunction issued by the United States District Court for the Eastern District of Wisconsin pending appeal as modified by order of the United States Court of Appeals for the Seventh Circuit in Cause No. 17502-3-4, but that the Receiver be and he is hereby authorized to cause true copies of this decree to be duly certified and authenticated under the Acts of the United States Congress and said copies to be filed with the said United States District Court for the Eastern District of Wisconsin in Civil Action No. 68-CO144 and the United States Court of Appeals for the Seventh Circuit in Appellate Cause No. 17502-3-4.
SO ORDERED, ADJUDGED AND DECREED on this the 18th day of June, 1969.
 /s/ J.C. Stennett 
 CHANCELLOR
The injunctive impediment in Paragraph 6 immediately above was removed by dissolution of the injunction on order of the United States Court of Appeals for the Seventh Circuit on March 19, 1970. 424 F.2d 1200. On March 25, 1970, Tom Virden, the receiver, was handed a cashier's check by Koehring, the judgment debtor, in the sum of $551,914.60 in payment of its judgment debt. Thereafter, on March 30, 1970, Koehring filed a motion to dismiss its appeal from the receivership decree alleging it to be moot, whereupon, the receiver moved for statutory damages pursuant to Mississippi Code 1942 Annotated section 1971 (1956), though he did not contest the motion to dismiss.
The primary issue raised by Koehring on the direct appeal, which questioned the validity of the appointment of the receiver, is removed from our present consideration since we sustain Koehring's motion to dismiss the appeal. The issues remaining are with regard to an award of the statutory penalty of 5% upon dismissal of the appeal and the question of the attorneys' fees.

I.

STATUTORY DAMAGES
Reference to Paragraph 1, subparagraphs (a) and (b), and Paragraph 2 of the chancery decree above indicates that it establishes priority of claims and directs payment thereof though the payment was subject to the prohibition by injunction of the federal court. The federal court, while giving consideration to an interpleader action brought by the appellants relating to the same judgment, granted dispensation to the state court for a hearing on the receivership petition which authorized an adjudication of all issues short of actual enforcement of the judgment. The receiver bases his contentions for statutory damages on Mississippi Code 1942 Annotated section 1971 (1956) which provides:
In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect the Supreme Court shall render judgment against the appellant for damages, at the rate of five per centum and costs, as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum. If the judgment or decree be for the possession of real or personal property, the damages shall be assessed on the value of the property; if the judgment or decree be for the dissolution of an injunction or other restraining process at law or in chancery, the damages shall be computed on the amount due the appellee which was enjoined or restrained * * *
Koehring now contends that the provisions of this statute are not applicable to *381 this appeal since the only assignment of error was: "The court below erred in entering its decree adjudicating claims to proceeds of judgment on June 18, 1969 * * *" and for this reason the decree does not fall within the ambit of the statute, and accordingly, no damages should be taxed for the unsuccessful appeal. In support of this position it cites the case of Clark v. German Security Bank, 61 Miss. 614 (1884) where we held that the forerunner of the present statute limited the damages to be awarded against an unsuccessful appellant to the categories enumerated in the statute: "  first, where the judgment or decree of the lower court is for a sum of money; second, where the judgment or decree is for the possession of real or personal property, and third, where the judgment or decree is for dissolution of an injunction or other restraining process at law or in chancery. * * *" (61 Miss. at 617). The opinion concludes with the statement that statutory damages are not to be awarded in any case other than those enumerated. This theme is continued in Redd v. Thompson, 56 Miss. 230 (1878) where it is stated in the opening sentence of the opinion as follows: "It is only by virtue of statutory provisions that this court can render judgment for damages against an appellant." Also, in Vicksburg Bank v. Adams, 74 Miss. 179, 196, 21 So. 401, 402-403 (1897): "* * * and damages can only be awarded in the cases expressly provided for by the statute." In the later case the court concluded that a judgment which levied an assessment on a bank for taxes was not within contemplation of the statute.
Having in mind the categories for which statutory damages might be awarded and also aware that in Canal Bank & Trust Company v. Brewer, 147 Miss. 885, 113 So. 552, 114 So. 127 (1927) we held that the statute must be strictly construed against the claim of the successful party, we nevertheless conclude that the appeal of Koehring is one from a monetary judgment and is within the ambit of the statute inasmuch as the decree expressly provides for the division of the proceeds of the money judgment. We are fortified in this conclusion by the case of Federal Reserve Bank of St. Louis v. Sparkman, 140 Miss. 336, 105 So. 637 (1925) where the statutory penalty was allowed on affirmance of a decree which adjudicated priority of liens on personal property though there was no money judgment against the appellant. We note also that Federal Reserve Bank of St. Louis quoted with approval the language of Tigner v. McGehee, 60 Miss. 242, 243-244 (1882) as follows:
The right of the appellee to judgment for damages on affirmance is independent of whether or not the judgment or decree appealed from is stayed by supersedeas. Damages follow affirmance as a penalty for appealing from a proper judgment or decree. (Emphasis added.)
See also Pearl River Valley Water Supply District v. Brown, 254 Miss. 453, 181 So.2d 631 (1966) where we held that the statutory penalty of 5% was proper on the voluntary dismissal of an appeal. We there construed Mississippi Code 1942 Annotated section 1971 (1956) in conjunction with Section 1965 (1956) and awarded statutory damages upon voluntary dismissal of an appeal. The latter section provides that upon the voluntary dismissal the appellant "shall be liable to judgment by said court [Supreme Court] as in case of an affirmance of the judgment or decree." As mentioned, we conclude that the argument of the appellant in avoidance of the statutory penalty is unavailing. We note in passing that the appellant argues in avoidance of the penalty that the receiver was not injured by the state court appeal since the injunction granted by the federal court effectively blocked disbursement of the proceeds of the judgment. We are of the opinion this argument is specious inasmuch as the injunction resulted from the efforts of the appellant and was held on appeal to be ill founded. The court on dissolution of the injunction stated: "We *382 conclude that Koehring's alleged fear of being exposed to multiple litigation was ill-founded, if not sham." Koehring Company v. Hyde Construction Company, United States Court of Appeals for the Seventh Circuit, March 19, 1970, 424 F.2d 1200.
Koehring next contends that in the event the statutory penalty be applicable, the 5% penalty should be taxed upon the judgment of this Court of October 18, 1966, in the sum of $406,396.89. The receiver contends that the penalty should be assessed from the date of the receivership decree, June 18, 1969, from which the present appeal is taken, which, including the interest calculated to that date, is in the sum of $533,047.90. Both parties rely upon the case of United States Fidelity & Guaranty Company v. Yost, 183 Miss. 65, 183 So. 260, 185 So. 564 (1939) in support of their contention that the penalty should be assessed from the respective dates urged by each. It states:
* * * The judgment of the court below was rendered on January 11, 1937, and was for $25,000 "with six per cent (6%) interest per annum from April 14, 1934, until said sum is paid, together with all costs accrued or to accrue herein." This judgment was affirmed by us on September 12, 1938. The damages allowed were $1,455.63, being 5% on the aggregate of $25,000 plus 6% per annum interest thereon from April 14, 1934, to January 11, 1937, the date of the rendition of the judgment in the court below. The appellant says the damages should have been allowed only on the $25,000.
The sum of money on which the statute contemplates damages to be rendered is that which appears from the judgment to be due when the judgment was rendered, and for which a recovery was awarded. It does not contemplate damages on interest which thereafter accrues. If the court below, instead of rendering its judgment in the present form, had added the interest then due on the $25,000 thereto, and rendered a judgment for the aggregate amount, the damages thereon would of course be 5% on this aggregate amount. This difference in the form of the judgment does not change its substance. The request to correct the judgment will be overruled.
We are of the opinion that this case supports the contentions of the receiver and that the statutory penalty should be assessed upon the judgment of June 18, 1969, which was in the sum of $533,047.90, the aggregate of principal and interest to that date, but that interest accumulated subsequent thereto should not be considered in computing the statutory penalty.

II.

ATTORNEYS' FEES
Prior to comment upon attorneys' fees we think it appropriate to state that the dismissal of the main appeal did not have the effect of dismissing the cross appeal of U.S.F. & G. Duckworth v. Allis Chalmers Mfg. Co., 247 Miss. 198, 150 So.2d 163 (1963). We are of the opinion that we have jurisdiction of the matters presented by cross appeal which require an adjudication thereon.
Attorneys' fees were awarded by the court below in a sum equal to 50% of the gross proceeds of the judgment, including accumulated interest to the date of its payment or the sum of $300,000, whichever sum was the greater, plus interest at the rate of 6% per annum on whichever sum be payable, calculated from the date of the decree to the date of distribution plus expenses incurred in the amount of $43,237.61 with interest at the rate of 6% per annum to be calculated from the date of its decree until paid.
The activity in the case began in August 1961. Hyde Construction Company, Inc., had contracted with Koehring for the latter to design and install a large concrete *383 mixing and cooling plant for use on the Keystone Dam Spillway project near Tulsa, Oklahoma, on which Hyde was the prime contractor. A dispute arose between Hyde and Koehring as to the performance of the plant and after efforts to resolve the dispute failed, Hyde employed Dunn and authorized the negotiation of a settlement of the dispute or an action for breach of contract warranty. Meanwhile, Hyde had certified to its bonding company, U.S.F. & G., that it was unable to complete the various construction projects upon which Hyde was the prime contractor including the Keystone Dam Spillway project. Negotiations for settlement failed and the present action was commenced on August 30, 1961. Previously the same form of action had been filed by Hyde in the United States District Court for the Southern District of Mississippi. Some phases of the ensuing litigation have been involved in the following courts: Chancery Court of Hinds County, Mississippi; United States District Court, Jackson, Mississippi; United States District Court, Tulsa, Oklahoma; the Supreme Court of Mississippi; United States Court of Appeals for the Fifth Circuit; United States Court of Appeals for the Tenth Circuit; the Supreme Court of the United States; United States District Court, Milwaukee, Wisconsin; and United States Court of Appeals for the Seventh Circuit.
The following officially-reported opinions by the various courts will supply many of the details and indicate the nature and scope of the legal services rendered: Koehring Co. v. Hyde Constr. Co. (CA 5, 1963), 324 F.2d 295; Hyde Constr. Co. v. Koehring Co. (CA 10, 1965), 348 F.2d 643; Hyde Constr. Co. v. Koehring Co. (CA 10, 1968), 388 F.2d 501; Koehring Co. v. Hyde Constr. Co. (1965), 254 Miss. 214, 178 So.2d 838; Koehring Co. v. Hyde Constr. Co. (1965), 253 Miss. 675, 172 So.2d 192, 178 So.2d 857; Koehring v. Hyde Constr. Co. (1966), 254 Miss. 214, 182 So.2d 580; Koehring Co. v. Hyde Constr. Co. (U.S. 1966), 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416; Koehring Co. v. Hyde Constr. Co. (U.S., 1967), 385 U.S. 949, 87 S.Ct. 323, 17 L.Ed.2d 227; Koehring Co. v. Hyde Constr. Co. (U.S., 1968), 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419; Dunn v. Stewart (D.C.Miss., 1964), 235 F. Supp. 955; Stewart v. Dunn (CA 5, 1966) 363 F.2d 591; and Dunn v. United States (CA 10, 1968), 388 F.2d 511.
The record reveals that there have been multiple appearances in several of these courts, and to further illustrate the widespread ramifications of the case, it is noted that this litigation or some phases of it, including the numerous collateral attacks on the judgment, have received the attention of thirty-nine different judges in nine different courts. The case has been to eight different states: Texas, Louisiana, Oklahoma, Wyoming, Colorado, Wisconsin, Illinois, Mississippi, and to the District of Columbia. It is without parallel in the annals of our jurisprudence and its uniqueness has attracted the attention of the United States Court of Appeals for the Seventh Circuit, Koehring Company v. Hyde Construction, Inc., et al., March 19, 1970, 424 F.2d 1200, prompting this comment:
The history of the antecedent litigation between Koehring and Hyde, including ancillary matters involving Vardaman S. Dunn, one of Hyde's attorneys, is contained in some seventy-eight pages of federal and state reports, the order from which this appeal is taken being reported at 297 F. Supp. 731. This formidable body of legal literature discloses that Hyde commenced its simple suit for breach of warranty in the Chancery Court of Hinds County, Mississippi in 1961, having first initiated the same as a diversity action in the United States District Court for the Southern District of Mississippi only to have that action transferred to the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1404(a). Koehring could clearly have removed the Chancery Court action to the same Mississippi District Court, 28 U.S.C. § 1441 (a), but declined to do so and answered *384 on the merits. The result is that the Chancery Court has had jurisdiction of the principal action, long since final but for collection of the judgment, since 1961.
Having failed to extricate itself from the jurisdiction of the Chancery Court by the simple expedient of removal, Koehring has nevertheless resisted the exercise of that jurisdiction by other means for nearly a decade. Specifically, it first prevailed upon the Oklahoma District Court to enjoin proceedings in the Chancery Court, and when the Chancery Court nevertheless proceeded to try the case, it obtained a further Oklahoma injunction enjoining Hyde from attempting to collect its judgment. All of such injunction proceedings were in derogation of 28 U.S.C. § 2283, as held in Hyde Construction Company v. Koehring Company, 10 Cir., 1968, 388 F.2d 501, cert. den. 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419. Even after the Tenth Circuit's decision became final by the denial of certiorari by the Supreme Court on May 6, 1968, Koehring persisted in its efforts to thwart the Chancery Court by intervening in a criminal contempt proceeding pending against Hyde in the Oklahoma court, again seeking an injunction to prevent Hyde from proceeding in Mississippi to collect its judgment. This time the Oklahoma court wisely declined, by order dismissing Koehring's petition on May 23, 1968.
Free at last, Hyde sought to enforce its judgment, so bitterly won. On May 24, 1968, it proceeded in accordance with normal practice to cause a writ of execution to issue to the sheriff, who in turn issued several writs of garnishment against firms indebted to Koehring and Fidelity. Its freedom proved illusory. Time and the course of litigation had not left all parties in the status quo ante. By 1968 Hyde had become insolvent and the judgment had been twice assigned and was subject to attorneys' liens and other claims. On this pretext Koehring, alleging fear of being exposed to multiple claims, commenced its interpleader action on March 27, 1968 and secured yet another ex parte injunction, this time from the Wisconsin court, enjoining Hyde and its codefendants in the Wisconsin case from enforcing the judgment. Fidelity echoed Koehring's demands by way of cross-claim. Although the Wisconsin court eventually dismissed the action and cross-claim, giving rise to this appeal, the injunction, as modified by our own Court on April 29, 1969, has been continued in effect.
Complex as the factual and legal history of this case may be, there is but one issue before this Court: Has a federal district court the discretion to dismiss an action in statutory interpleader on grounds of equity and comity, when the interests of the stakeholder and all claimants will be adequately protected in a pending state court proceeding? The short answer is yes.
The claim of U.S.F. & G. to a portion of the judgment is based upon a November 18, 1959, assignment from Hyde. This claim was propounded by U.S.F. & G. at the trial to determine the priority of claims as well as the amount of the attorneys' fees. This trial also made a determination of the amount U.S.F. & G. was to receive since the other claimants were removed from the suit, either by stipulation or disclaimer, thereby entitling U.S.F. & G. to receive that portion of the judgment remaining after the award of attorneys' fees.
The cross-appellant assigns as error:
(a) The Court below erred in allowing an attorneys' fee to be determined on the basis that the compensation was uncertain and contingent.
(b) In any event, if a fee in the nature of a contingent fee is to be allowed, such fee should be determined on the basis of the net recovery after deduction of all proper expenses.
(c) In any event the fees of the other attorneys associated by Dunn to assist *385 them should be paid out of the fee allowed Cox, Dunn & Clark and should not be allowed as a separate and additional expense item.
(d) The lower court erred in allowing reimbursement of the Circle "L" claim which Cox, Dunn & Clark purchased on June 5, 1968.
(e) The lower court erred in allowing Cox, Dunn & Clark reimbursement for the attorneys' fees paid to the California law firm that Hyde, Inc. employed to prosecute a claim against the United States Corps of Engineers.
(f) The lower court erred in allowing Cox, Dunn & Clark interest on certain expense items which have not yet been paid by Cox, Dunn & Clark.
At the outset we note that no question is raised as to the allowance of attorneys' fees. The only question is to the amount thereof. In approaching the problem we do so with the conviction that the laborer is worthy of his hire even though he be a lawyer. This does not mean, however, that an award can be made with generosity on the one hand or with penurious disregard to the attorney's labor on the other, but rather that it should be made with due regard to the following pertinent factors: The time, labor and costs involved, the novelty and difficulty of the questions involved, the skill requisite in being able to handle the matter properly, the possible jeopardizing or loss of clients or employment while the firm was engaged in this pursuit, the customary charges for similar services, the amount involved and the benefits resulting to the client, the contingency or uncertainty of compensation, and the nature of the courts before which the case was tried. Miss. State Bar, Fee Computation and Suggested Minimum Schedule, § 1, p. 4 (1967), and Hinds County Bar Ass'n, Suggested Basis of Minimum Fee Computation, § 1, p. 6 (1967). These factors were of course before the trial court when it made its award and the decision of the trial court is persuasive as to the validity of its judgment on the question of attorneys' fees. However, this Court exercises its own independent judgment in this regard based upon its own knowledge and experience. See Johnson v. Howard, 167 Miss. 475, 141 So. 573 (1932) wherein we stated:
We have also taken into consideration the well established rule that such opinion evidence of members of the bar is admissible, but is not conclusive on the court. Humphreys County v. Cashin, 128 Miss. 236, 90 So. 888. The court in determining the question has the right to add to the evidence its opinion based on experience and observation.
Since this case is unique in regard to the amount of time involved, and the size of the judgment, which factors can be considered by this Court in its own independent judgment, the case is being considered en banc in this instance.
The first contention in opposition to the award is that it was made on a contingent fee basis which the cross-appellant asserts was not warranted by the facts. It is argued that if U.S.F. & G. had been permitted to do so, it could have by evidence established that the Keystone project was actually a partnership composed of E.E. Morgan and R.W. Hyde, Jr., and that Morgan was able to pay the fee. We think little of this approach since it is contrary to cross-appellant's admission that the appellees are entitled to their fee in some amount from the present judgment. Moreover, the uncontradicted evidence reflects that Hyde Construction Company employed Messrs. Cox, Dunn & Clark as its attorneys in this matter and that they were not hired by either Morgan or Hyde individually. Attorney Dunn testified: "I was not hired by either one as an individual. I was hired by the corporation." Again, "Let me get one thing straight with you. We represented the corporation in this matter. We did not represent Mr. Morgan. We did not represent Mr. Hyde."
The testimony reflects without contradiction that the attorney-client relationship *386 began at a time when Hyde Construction Company, Inc., was solvent and began on a reasonable fee basis, but that Hyde Construction Company, Inc. became insolvent during the course of the litigation and was subsequently unable to fulfill any fee obligation since its assets had been assigned to U.S.F. & G. The only reasonable expectation of a fee thereafter rested upon, and solely upon, the ultimate recovery of a judgment against Koehring. In fact, complainant's attorneys engaged in difficult litigation at the risk of loss of labor and money since they had assumed financial obligations necessary to carry on the litigation. They ultimately succeeded in obtaining a substantial judgment in the chancery court. This judgment as later modified on appeal amounted to $406,396.89 plus interest from April 8, 1964.
The litigation preceding this judgment and subsequent thereto has been bitterly contested. There was no assurance that a judgment could be obtained in the first instance nor that it could be collected thereafter. The risk of loss, labor and personal finances by the attorneys, was great. Under the peculiar facts and circumstances of this case we are of the opinion that their services were out of the ordinary and were performed under unusual and trying circumstances which requires us, in justice, to conclude that the fee was highly contingent and that the award was properly made on that basis. We are of the opinion, therefore, that the contention of the cross-appellant that the award should not have been made on a contingent basis is not well taken.
The argument is next made that in the event a contingent fee be upheld, then the amount thereof should be determined on the basis of the net recovery after deduction of all proper expenses. The general rule in regard to contingent fees is stated in 7 C.J.S. Attorney and Client § 191b at page 1090 (1937) as follows:
The percentage coming to the attorney is usually reckoned on the amount actually recovered by the client, and not on the amount of the judgment, unless the language of the contract is such as to justify such an interpretation. The amount actually recovered, within the meaning of this rule, is the net amount recovered, that is, the amount allowed by the judgment less the amount of any claim, expense, or offset that may properly be deducted therefrom * * *
As stated, the lower court allowed a fee of 50% of the gross recovery, or $300,000, whichever is the greater. The gross recovery is less than $600,000 which means the lower court allowed a fee in excess of 50% of the judgment plus the additional expenses. The appellee does not respond to this contention other than to state that if it is "customary" that expenses be first deducted before calculating contingent fees, that this case is far from customary when it is considered that the attorneys were required to incur and pay expenses of $43,237.61 without any guarantee or hope of reimbursement other than from the proceeds of the judgment hopefully to be awarded and collected.
Honorable Earl Thomas, a member of the Mississippi Bar, and with many years of experience in trial work, was of the opinion that 50% of the gross recovery or $300,000, whichever is greater, with legal interest, plus a recoupment of expenses in the sum of $43,000, was reasonable. He did state, however, with some qualification that it was the usual practice in this area when a lawyer takes a fee on a contingent basis, that the expenses be lifted off the top of the recovery and then the division of the net be made between the attorney and client. Honorable N.W. Overstreet, Jr., also an attorney of many years before the bar and with great experience, was of the same opinion as Attorney Thomas except that he was not questioned concerning the payment of expenses before attorneys' fees. The cross-appellant therefore contends that as a general rule an attorney hired on a contingent fee basis has no implied authority to employ other counsel at the expense of his *387 client though he may, of course, at his own expense employ other counsel to assist him. He cites Whitlow's Administrators v. Whitlow's Administrators, 109 Ky. 573, 60 S.W. 182 (1901), the holding of which is summarized in the syllabus as follows:
Where a contract with an attorney for a contingent fee provides that, in the event of recovery, the "necessary expenses" of the attorney are to be first paid, and his fee to be estimated on the balance, the fees of assistant counsel employed by the attorney cannot be deducted as "necessary expenses."
See also Snyder v. Howard Administratrix, 251 Ky. 592, 596, 65 S.W.2d 477, 479 (1933) where the court stated:
* * * The rule is well settled that where a lawyer takes a case on a conditional fee he cannot employ other counsel and charge this to his client without the client's consent.
We conclude from the expression taken from 7 C.J.S., supra, and the cited cases, as well as our own general knowledge upon the subject, that a proper and fair contingent fee, which arises by implication of contract and law as it does here, should not exceed 50% of the net recovery. Giving due consideration to all of the circumstances involved, such as the amount of time required, the unusual trying factors, the threat of imprisonment arising out of the litigation, and the nature of the suit, we conclude that an award of 50% of the net recovery to appellee as attorneys' fees would be equitable to all parties concerned. The items of expense for the payment of attorneys in Oklahoma, aggregating $33,225.50; in Wisconsin, in the aggregate of $4,875.97; in California, in the sum of $2,034.56; and in Mississippi, $2,011.25 to Honorable William E. Sudduth, Jr. for legal services in a habeas corpus proceeding, are deleted from the decree of the chancellor as being erroneously awarded. The expense item of $3,000 for the purchase of a judgment held by Circle "L" Electric Company against Hyde Construction Company, Inc., in our opinion, was erroneously included as a legitimate item of expense for which the attorneys should be reimbursed. We think the purchase of a subordinate lien by an attorney, which has the effect of elevating it over a prior claim of the cross-appellant, cannot be equitably maintained. It is therefore deleted from the decree of the lower court.
We conclude that the attorneys are entitled to one-half of the amount tendered to the receiver on March 25, 1970, but less the sums awarded for expenses by the chancellor and mentioned specifically above. We do not deduct the sum of $30,000 paid to the attorneys as expense funds necessary to the litigation in view of the unusual factors in this case which we do not reiterate for the sake of brevity.
The motion of Koehring to dismiss its direct appeal is sustained. The decree of the Chancery Court is affirmed in part and reversed in part and remanded for the distribution of the judgment in accord with this opinion.
All Justices concur.