COFER, Justice,
for the Court:
Attorney David A. Harris has appealed from the action of a Complaint Tribunal assembled under Mississippi Code Annotated, section 73-3-301 et seq. (Supp.1980). The Mississippi State Bar has filed cross assignments of error.
Appellee (Bar) filed its petition alleging several counts of violations of rules governing conduct of attorneys, in three matters wherein the appellant (Harris) was attorney:
(1) A suit in Alabama involving some interests in land held by Harris’ clients and judicially established for them and sold by the Court, this being during 1973.
(2) A domestic relations suit in Hinds County, wherein Harris represented a party. This took place in 1975.
(3) A claim by the same client as next above involving an automobile collision in 1976.
The bar invoked several disciplinary rules approved by this Court of which applicable ones appear as the appendix to this opinion.
After hearing held, the Complaint Tribunal found Harris guilty of certain of the assertions of the Bar as to the Alabama suit, and imposed upon him a three year suspension from the practice of law. It also provided a private reprimand of him for questionable application of his fee arrangement to funds received by his clients in the automobile collision settlement. He has not appealed from the reprimand feature of the tribunal’s orders. The Bar has assigned as error the failure of the tribunal to order disbarment, in considering the three areas of the accusations in isolation, and in its failure to find as sustained the charge that Harris had overcharged his client for services in the collision adjustment handling.
Both he and it complained of the tribunal’s failure to reveal its view of a correct fee in the Alabama matter.
We consider the transactions in the Alabama matter. About March 1973 Harris was approached, and a contract was executed, by Lonnie C. Johnson and William N. Rucker, Jr., who spoke for themselves and apparently undertook to speak for others, including one Brick Mason, who claimed interests in the land. The contractual fee and Harris’ conduct relative thereto are the bases for the suspension by the tribunal, mentioned above.
The services undertaken were “for recovery of our interest in ...” and the compensation therefore was to be “.. . 33%% of any recovery made before suit is filed, 40% thereafter, through trial; 50% for appeal.” It was strictly a contingent fee: “... and if no recovery is made, I will not owe my attorney any sum whatsoever as attorney’s fees.”
Harris associated one Scott, an Alabama attorney, in the suit. Suit was filed, wherein Harris asked, for his clients, that the court allow attorney’s fee for his client. The Alabama court adjudged the claims against the land, and the share, subject to such claims, each owner held therein, and what percentage each was entitled to receive from the proceeds derived from the court’s sale of the land. In its order, the court fixed a fee of $1,875 to be paid to the plaintiff’s attorneys (Harris and Scott) and a fee in the same amount to be paid to the defendants’ counsel. It found an earlier realtor charge was owed and should be paid out of the sale proceeds; it found that two *1309 defendants were entitled to reimbursement for amounts they had respectively paid on account of the land.
The court-ordered sale grossed $16,200, from which there were paid several deductions in the total amount of $11,832.90, leaving a net amount of $4,367.10 to be distributed to the several owners of interests therein, with $2,608.75, belonging to the Harris litigants. Peeling that the court had erred, Harris filed petition for review by the court which was of no avail. No appeal was taken by any party and the orders of the court became a verity.
The share of Harris’ clients was paid to Scott, who took from the whole remittance his one-half (agreed division between Harris and Scott) of the court-fixed fee and one-half of the 40% of the $2,608.75, identified hereinabove, and sent the remainder of the recovery to Harris.
Harris, on the other hand, applied the 40% against the clients’ share of the gross recovery, and emerged with the claim of $4,164.05, as fee, and contended with Johnson and Rucker that he was entitled to $431.87 in addition to what he had received. (The record shows no effort to collect this claimed additional amount).
Weeks passed and the disappointment of Johnson and/or Rucker, in particular, brought Harris and Johnson into a conference which had the participation of Attorney Roberts, Johnson’s friend in whose behalf he was in the conference. There the parties arrived at an understanding not very clear in the record. When Roberts had left the conference, Harris gave to Johnson and Rucker a check each in the amount of $154, and wrote up an agreement which was signed by the three of them, wherein it was stated that Johnson and Rucker would each be entitled up to $1,500, less $154, of any proceeds “finally awarded [by the Alabama Court] on rehearing of prior disbursement by register.” (It is repeated here that the petition for rehearing was denied.) The $154 checks showed that they were partial disbursements.
In his fee activities with Johnson and Rucker, had he otherwise been correct in his computation for the fee, he took incongruous positions that (1) he was bound by the Alabama’s court order and that, in addition, there was more that that Court might adjudge against them, and (2) his attorney-client relation is by a Mississippi contract, and the Alabama court could not direct them as to payment of the fee.
The Alabama suit was brought on behalf of multiple plaintiffs including one Brick Mason, as shown above. When the trial began Mason disclaimed his status as a plaintiff, and the record is sufficient to conclude that he actually lent assistance to the defense, or otherwise identified himself with the defendants. In spite of this fact, Harris continued to calculate his fee as if Mason’s share was involved, did not reduce the total percentage of his clients’ share to eliminate therefrom Mason’s recovery, and took the position that he was entitled to payment of the fee represented by Mason’s share, because Johnson and Rucker occupied or assumed a position of agency toward Mason and were liable to Harris if Mason did not pay him.
It is to be noted further that while his fee as calculated by him exhausted all of the shares of the other clients whom he represented, his further transactions with Johnson and Rucker were between him and the two of them, and he made no further payment to those other clients (as would have been consistent with the $154 he paid to Johnson and Rucker each), and he did not include them in the agreement to share to any extent in any benefit that might be realized from the Alabama court rehearing.
We are at a loss to understand how the shares of the clients other than Johnson and Rucker could have been exhausted, in view of the fact that their shares bore the same proportions of value and liability, as did those of Johnson and Rucker, nor do we see how it might be argued that these dissident and complaining clients should receive other, partial amounts of $154 each while those clients of lesser proportions should receive nothing, and should not be included in any subsequent distribution expected to be received in the rehearing or in any other rehearing.
*1310 One of Harris’ contentions throughout the tribunal hearing and here is that the agreement with Johnson and Rucker amounted to an accord and satisfaction of a fee dispute, and the case was settled thereby. We do not agree that the Bar’s and the public’s interest ought thereby to be satisfied, and that they, the three of them, might be able to cut off activity on the part of the Bar toward jealous preservation of the image of the courts and Bar of the state.
Harris contends that his was a “gross recovery” contract, but it is illogical to suppose that any party to the agreement considered that, in recovering his interest, he might, in addition to the loss of all that interest, become deeply indebted to his attorney. Logic leads us to the conclusion that the “interest” owned by the clients would be an interest from which had been pared enforceable demands there against held by others, as was here done.
The parties differ in their application of Koehring Co. v. Hyde, 236 So.2d 377 (Miss.1970). That opinion, quoting from 7 C.J.S., Attorney and Client § 191(b) p. 1091, says:
... The amount actually recovered, within the meaning of this rule, is the net amount allowed by the judgment less the amount of any claim, expense or offset that may properly be deducted therefrom .... (236 So.2d at 386).
It is true that (1) the plaintiffs laid upon the Alabama court the responsibility for fixing the fee, by their very pleadings, and (3) the fee of $1,875 was fixed and there was no appeal from the allowance thereof. We are of the view that they obtained a judicial consideration of their fee, and are bound by it. We are of the further view that the fee of $1,875 was adequate under the facts and the retainer agreement. The fee of $1,875 allowed by the Alabama court is larger than a fee reached by taking 40% of the $4,367.10, adjudged as distributable proceeds of the sale to be disbursed to all parties in interest.
We affirm the tribunal’s conclusion that Harris seriously erred in the charge he made, the misrepresentations of which he was guilty, and in his failure, as to the further fee transactions with Johnson and Rucker, to include the rights and interests of all of his clients therein.
The Bar has pressed for Harris’ disbarment, and takes exception to the tribunal’s consideration of each of the three areas of accusation on a separated, isolated basis. While, in its disposition of the complaint, it has given attention separately to the Alabama matter, the domestic relations matter, and the collision settlement, there is nothing in the record to lead us to the conclusion that in fixing the suspension span of years, it did not consider the involvement or lack of involvement of Harris in all three of the phases of the complaint and its conclusions as to each of these charges.
We fail to find reversible error in any of the matters assigned as error, by Harris or the Bar, and affirm the tribunal in its findings and conclusions.
We are of the view, however, that the tribunal’s sentence is in excessive length, on consideration of the entire record, keeping in mind the accusations made and the purpose of our visiting sanctions on attorneys falling below our standards of behavior. We reduce the suspension to one year and fix that length as the period of his suspension.
AFFIRMED AS TO FINDINGS; PERIOD OF SENTENCE REDUCED TO, AND FIXED AT, ONE YEAR.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., took no part.
ADDENDUM
DISCIPLINARY RULES
DR 1-101 Maintaining Integrity and Competence of the Legal Profession.
[A] A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar.
*1311 [B] A lawyer shall not further the application for admission to the bar of another person known by him to be unqualified in respect to character, education, or other relevant attribute.
DR 1-102 Misconduct.
[A] A lawyer shall not:
[1] Violate a Disciplinary Rule.
[2] Circumvent a Disciplinary Rule through actions of another.
[3] Engage in illegal conduct involving moral turpitude.
[4] Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
[5] Engage in conduct that is prejudicial to the administration of justice.
[6] Engage in any other conduct that adversely reflects on his fitness to practice law.
******
DR 2-106 Fees for Legal Services.
[A] A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
[B] A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
[1] The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
[2] The likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer.
[3] The fee customarily charged in the locality for similar legal services.
[4] The amount involved and the results obtained.
[5] The time limitations imposed by the client or by the circumstances.
[6] The nature and length of the professional relationship with the client.
[7] The experience, reputation, and ability of the lawyer or lawyers performing the services.
[8] Whether the fee is fixed or contingent.
[C] A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case. ******
DR 6-101 Failing to Act Competently.
[A] A lawyer shall not:
[1] Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
[2] Handle a legal matter without preparation adequate in the circumstances.
[3] Neglect a legal matter entrusted to him.
******
DR 7-101 Representing a Client Zealously.
[A] A lawyer shall not intentionally:
[1] Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 1-101[B]. A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
[2] Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
[3] Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102[B],
[B] In his representation of a client, a lawyer may:
*1312 [1] Where permissible, exercise his professional judgment to waive or fail to assert a right to position of his client.
[2] Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal.