## LENGSFIELD & CO. vs. RICHARDSON & MAY.

1. ATTORNEY AND CLIENT : *Confidential relations.  Privileged communications.*
   The rule requires that the entire professional intercourse between client and.

attorney, whatever it may consist in, should be protected by profound secrecy. The exemption is not confined to advice given or opinions stated; it extends to facts communicated by the client—all that passes between client and attorney in the course and for the purpose of the business. The privilege is for the client, and not for the attorney. The interests of justice and the protection of private rights demand the strictest confidence and privacy in this relation.

2. CONTRACT: *Consideration. Agreement to ship cotton to factor.*

Where L. & Co. agreed, for a consideration expressed, as part payment for lands, that their firm would ship all the cotton they controlled to R. & M., factors in New Orleans, and then declined to ship the cotton, it was a breach of their contract, for which the factors may sue and recover damages.

3. DEED OF CONVEYANCE: *General or limited warranty.*

Where the vendees of lands employed an attorney, as agent, to make a purchase for them, which was consummated in the execution of deed warranty, limited to the extent of the pecuniary consideration or sum paid for the land, and the vendees accept the deed without objection, having full knowledge of the limit of warranty, the failure to warrant generally cannot be afterwards set up in defense.

ERROR to the Circuit Court of *Washington* County.

Hon. C. C. SHACKLEFORD, Judge.

All the material facts in this case are stated in the opinion of the court.

It is assigned for error :

1. The court below erred in overruling the motion for a new trial.

2. In allowing three replications to one of defendants' pleas, and in trying the case on the pleading as made.

3. In refusing instructions asked for by defendants below, and in giving those asked by plaintiffs.

4. In permitting Percy, attorney at law for defendants, to testify in the case.

*Johnston & Johnston*, for plaintiffs in error :

It was error to admit the testimony of Percy, the attorney who represented the defendants and negotiated the contract for them in the purchase of the land. He should not now be permitted to testify against them. If he had been merely consulted by them he could not testify against them about the same matter. Crisler *v.* Garland, 11 S. & M., 136.

The foundation of the claim for damages is a singular and

flimsy one.   Richardson & May bought the land at bankrupt sale.   Title doubtful.   Richardson sold to defendants below for the same price he paid for it ($8,000), and defendants agreed to ship their cotton to Richardson & May, cotton factors in New Orleans.   They failed to ship the cotton, and Richardson & May sued for the damages sustained by reason of such failure.   It does not appear that any real damage was sustained.

As to the pleadings, the statute provides that the plaintiff shall not file several replications to a plea, unless he make affidavit that the replications are true, or that he has just grounds to traverse the several matters proposed to be traversed by him (Code, 1871, § 608), and leave of the court must be granted.   Hunter *v.* Wilkinson, Ex'r, 44 Miss., 721.

*W. L. Nugent,* for defendants in error :

The whole case presents an issue of fact, which was fairly tried by the jury and ought to stand as the jury left it.

Richardson gave for the land $8,000.   Refused to take that sum, but proposed to take $9,000 ; but defendants agreed to give him $8,000, and their cotton shipments to his house for the next season, but failed to do so, and he was damaged thereby, and sues for his damages.

It is shown that defendants shipped that season to Meyer, Weiss & Co. 426 bales of cotton, and that the profit which a merchant doing that business for the season would have made in handling this cotton was $3 per bale, or $1,278.   So that the actual damage sustained was $1,278.   But as Richardson had offered to sell the land, and give a warranty deed, for a profit of $1,000, the jury limited their verdict to that sum.   Richardson never promised to make a deed of general warranty to the land, nor did he promise to make advances when the promise was made to ship the cotton.   The letter in which the promise was made to ship the cotton is plain and simple, and the contract was supported by a valuable consideration.   Richardson made the deed, with the warranty, and took the letter written by the plaintiffs in error as the

consideration for the deed, and in the whole transaction Richardson represented his firm.    No objection to the deed was ever made to the firm until the trial of this suit.    Aside from this, the words employed are a full warranty, and the stipulation that the warranty has only to extend to the $8,000 paid was just such as the law required.    Without the use of the words of limitation the effect would have been the same. Phipps *v.* Tarpley, 31 Miss., 433; Herndon *v.* Herndon, 34 ib., 486.

SIMRALL, C. J., delivered the opinion of the court.

This suit was brought by Richardson & May, to recover damages for the breach of a contract by Lengsfield & Co. to ship cotton to them at New Orleans, for sale, as factors.    The plaintiffs in error are precluded from predicating error of the interposition by Richardson & May of two special replications to the third plea of the defendants, without affidavit and the leave of the court.

The defendants did not avail of this irregularity in the *nisi prius* court.    Without disregarding the last replication, or moving to displace it from the files, or disregarding it as a nullity, or in any manner objecting, they filed rejoinders and made up formal issues on both.    Consenting so unmistakably to these several answers to their plea, the defendants are precluded from making the irregularity a ground of error.    In Hunter *v.* Wilkinson, Ex'r, 44 Miss., 728, the attempt thus to plead, without affidavit and leave of the court, was ·excepted to in the circuit court.

The plaintiffs in error also complain of the admission of incompetent testimony, the refusal to grant prayers of instructions, and the overruling the motion for a new trial.

The contract counted upon by the plaintiffs grew out of the sale by E. Richardson, one of the plaintiffs, of the Hinds plantation to the defendants below.    The plaintiffs' case is that as part consideration of the property the defendants agreed to ship to Richardson & May all the cotton

of the crop of the year 1872 which they controlled. The defense was that Richardson did not make the covenants of warrant in his deed as broad as he agreed to make them, and in consequence the defendants were absolved from the obligations to ship the cotton. Col. Percy was employed by the defendants to negotiate the purchase; he drew the deed, and, as he states, all the knowledge he had was derived by him from Lengsfield & Co., whilst acting as their attorney. The defendants objected to his competency on account of his professional relations to them. Mr. Greenleaf states that the rule requires that the entire professional intercourse between client and attorney, whatever it may have consisted in, should be protected by profound secrecy. Ev., § 239. The exemption is not confined to advice given or opinions stated; it extends to facts communicated by the client—all that passes between client and attorney in the course and for the purpose of the business. The privilege is for the client and not the attorney. Lord LYNDHURST, in Herving v. Clobery, 1 Phil., 91. So stringent is the rule that in Crisler v. Garland, 11 S. & M., 138, an attorney to whom application was made to draw a deed, and who declined the employment, was not permitted to disclose communications made by the party, to the effect that his object was to make a fraudulent conveyance. The rule rests on grounds of public policy. The interests of justice and the protection of private rights demand the strictest confidence and privacy in this relation. We think that the attorney was an incompetent witness.

It becomes material, in order to present our views, to notice with some particularity the testimony on the prominent points of the case. Col. Richardson stated that he bought the property at assignee's sale, for $8,000, and was willing to transfer his bid to any person who would take the assignee's deed; that the title was under a cloud, and that he would not become responsible for it unless he sold for $9,000; that he had declined one or two offers of $8,000. Col. Percy, for the defendants, offered him $8,000 for a deed of general warranty,

which he declined. Col. Percy then proposed to give $8,000 cash, with a warranty to that extent, and that his clients, in further consideration, would ship to Richardson & May the cotton which they might control. This offer was accepted. In these negotiations nothing was said about advances. De- fendants informed witness they would not need any. Col. Percy prepared the draft of the agreement to ship 500 bales of cotton, which the defendants refused to sign, because they were not willing to obligate themselves to ship any specific amount, but said they were willing to ship their cotton of that season, more or less.

J. T. Lengsfield drew up and handed to Richardson the writing dated 11th May, 1872, in the form of a letter to the plaintiffs, and to this effect :

"In consideration of your Mr. Richardson selling to us the Hinds place, and making us a warranty deed therefor, and from the high standing and good reputation of your house, we propose to give you our entire business next season.

[Signed,]                                    LENGSFIELD & Co."

This was received by Richardson as satisfactory.

J. T. Lengsfield, one of the defendants, stated as a witness that his firm employed Col. Percy to make the purchase at $8,000 cash. The attorney reported that Richardson would not sell at that price, with general warranty, but would do so for $9,000. Percy was then authorized to offer $8,000, with defendants' business, for a warranty title. Witness met Col. Richardson, who presented for signature the paper about shipping 500 bales cotton. He did not sign for two reasons : because he was not willing to become responsible to ship a definite quantity, and there was no obligation on Richardson & May to advance anything, if needed. Witness wrote the letter of 11th April (11th May), and handed it to Richardson, who said it was satisfactory. Supposed the defendants were to get a deed of general warranty; but when the deed was delivered, witness *took it and made no objection to it.*

The reason assigned for not shipping cotton was that one of

the defendants were, at the time this transaction was consummated, in New York buying goods, and had come under obligations to ship to Meyer, Weiss & Co., which they felt in honor bound to comply with. This explanation was given to Richardson in the fall of 1872. Witness further stated that in March, 1873, he applied, with an open letter from Meyer, Weiss & Co., as we may infer, stating the state of defendants' business with them, to Richardson & May to transfer their business to them. Mr. May declined in terms stating that he could not make advances. On cross-examination witness said he did not employ Col. Percy to get a deed, only of general warranty, and instead of doing so, he got one only to the extent of $8,000, but he supposed he was to get a deed of general warranty ; but witness *was satisfied with the deed when he saw it.* Did not refuse to ship cotton because of the limited warranty, but for the reason that his firm was indebted to Meyer, Weiss & Co., and honor required they should be first paid. Richardson never expressly agreed to make advances. May, in his deposition, says that, deriving his information from Richardson, the defendants, in part consideration for the Hinds place, agreed to ship to his firm cotton, and that the attention of the defendants was called to the subject by several letters. One dated the 26th of October and another the 24th of November, are attached to his deposition ; the latter refers to the defendants' letter of the 11th of May as the agreement between the parties ; says the call of one of the defendants on him, in the spring of 1873, was to make arrangements about the crop of 1873–1874. Richardson remained in Greenville some time after the execution of the deed. Putting altogether out of view the testimony of Col. Percy, and the weight of the evidence establishes that Richardson agreed to sell, and the defendants to purchase, the Hinds place, with a warranty limited to the pecuniary consideration. J. T. Lengsfield does not state that he employed Percy to buy with general covenant of warranty, but supposed he was to get such a deed. However that may be, he does say that when the deed was

29

delivered to him he took it *and made no objections.* He further says he *supposed he was* to get a deed of general warranty, but witness was *satisfied with the deed when he saw it.*

It is hardly to be supposed that so intelligent an attorney as Col. Percy would negotiate the purchase in conflict with the instructions of his principals. But, if there may have been mistake, defendants waived it, and distinctly ratified the bargain by the acceptance of the deed and their acquiescence from that day until now. They not only made no objection at the time, but the principal in the business, J. T. Lengsfield, affirmed on the trial that the defendants were satisfied with the deed. In addition to this, the defendants, in their correspondence with the plaintiffs and in evidence on the trial, put the refusal to ship cotton on the ground of prior engagements with other parties, which they could not violate, and did not refer to a non-compliance by Richardson with his part of the contract. Independent, then, of the testimony of the attorney, it is clearly proved that the consideration of the sale, on the covenant set forth in the deed, was the cash payment and the contract to ship cotton. If there is doubt as to the original agreement as to the covenant, the proof is clear and full that the defendants accepted and ratified the covenant as written. The finding of the jury is right on the evidence.

The instruction for the plaintiffs is to the effect " that if the jury believe that the contract of sale was for $8,000 cash and a promise by the defendants to ship cotton, and that defendants did not ship cotton, then the plaintiffs are entitled to recover the customary commissions on so much cotton as defendants controlled and shipped.

The proof was that the defendants shipped to market 500 bales, and that the factors would make about $3 per bale. The verdict was for $1,000. The instruction propounds a correct rule, and the result reached by the jury was warranted by the testimony. The court refused to charge the jury that " if the defendants agreed to give Richardson & May their business, as stated in the declaration, in consideration of

Richardson's selling the plantation and making a deed warranting the title, and Richardson made a deed only of limited and not general warranty, the defendants are not bound by such agreement, and the jury must so find; and, further, if the jury believe that the business was tendered, as contemplated by the contract, and was declined by the plaintiffs, then the jury will not compute in their assessment of damages the failure to ship cotton after such tender.''

It might be conceded that both these prayers contained correct rules of law, and yet the verdict stand, if it be plainly and clearly right, and the same evidence should produce the same finding on another trial. Simpson v. Bowden, 23 Miss., 524. Or if this court should be satisfied that the giving of the instruction ought not to have changed the result. Prichard v. Meyer, 11 S. & M., 178.

It is plain if the first of these had been given to the jury, and they had found for the defendants, the verdict ought to have been set aside as against the testimony. If that be so, surely the court did right in not embarrassing the jury with it. There is no real support in the testimony for the last prayer. It was proved positively that the failure to ship was attributed by the defendants to prior engagements which they could not evade. The proposal to accept the business in March, 1873, was accompanied with conditions which were not included in the contract. The refusal was put on the ground that Richardson would not make advances; the proof is that none were ever asked for, none were provided for in the contract.

Richardson had already paid for the business of the defendants, in part consideration of the land, and they could not claim other and additional compensation for it not contemplated and provided for in the original contract. The transfer offered in the spring of 1873 was not in compliance with the original contract, but upon new and independent terms.

Although the testimony of Col. Percy was incompetent, and ought to have been excluded, the facts were by other com-

petent testimony sufficiently proved, and the verdict ought to have been the same if it had been excluded.

In such circumstances, for that error a new trial will not be awarded.   Ford *v.* Williams, 34 Miss., 533.

In view of the whole case we think the verdict and judgment are right.

Judgment affirmed.