**HYDE CONSTRUCTION COMPANY, Inc., Plaintiff-Appellee-Cross Appellant,**

v.

**KOEHRING COMPANY, Defendant-Appellant-Cross Appellee.**

**Vardaman S. DUNN, Plaintiff-Appellee-Cross Appellant,**

v.

**KOEHRING COMPANY, Defendant-Appellant-Cross Appellee.**

**No. 71–1759.**

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1972.

Godbold, Circuit Judge, concurred in part and dissented in part and filed opinion.

Dan H. Shell, Scott Tennyson, Jackson, Miss., for Koehring Co.; Satterfield, Shell, Williams & Buford, Tennyson & Britt, Jackson, Miss., of counsel.

Vardaman S. Dunn, W. E. Suddath, Jr., Jackson, Miss., for plaintiffs-appellees; Watkins & Eager, Cox & Dunn, Ltd., Jackson, Miss., of counsel.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This is an interlocutory appeal and cross-appeal allowed under 28 U.S.C.A. § 1292(b) to settle a discovery problem which lies at the heart of a pending controversy. It is indeed that rare case where the issue presented in the context of discovery and a foreordained trial of

unusual length, involves a controlling question of law and where an immediate appeal may materially advance the ultimate termination of the litigation.[1]

Two suits are involved, both removed from a Mississippi state court. The defendant in each is Koehring Company. The plaintiff in one suit is Hyde Construction Company, Inc.; the plaintiff in the other is Vardaman S. Dunn, former and present counsel for Hyde. The cause of action in each is alleged to be abuse of process which arose out of a long course of litigation between Hyde and Koehring. The abuse of process is said to have been at the hands of counsel for Koehring, acting as its alter ego.

The discovery problem involves 81 documents as to which Koehring claims the attorney-client privilege. The district court found that 48 were privileged but that the remaining 33 were not. Each party claims total error; i. e., Hyde and Dunn say none are privileged; Koehring says all are privileged.

As will be seen, after following meanderings of the parties to arrive at the center of gravity, and after considering the law of privilege to the extent of deciding what the Supreme Court of Mississippi has not decided on the same subject, we affirm the district court in part and reverse in part.

### I.

We need only a brief outline of the prior litigation between the parties as a background to the issue presented. The full history is contained in many pages of federal and state reports. See Hyde Construction Company, Inc. v. Koehring Company, S.D.Miss., 1969, 321 F.Supp. 1193 and cases cited therein (opinion of district court denying motions to dismiss in these matters).

In 1961, Hyde commenced an ordinary suit for breach of warranty in the Chancery Court of Hinds County, Mississippi. A few days earlier, Hyde had filed suit asserting the same cause of action under diversity jurisdiction in the United States District Court for the Southern District of Mississippi. Koehring's motion to transfer that action to the Northern District of Oklahoma, pursuant to 28 U.S.C.A. § 1404(a), was denied. We reversed and ordered the case transferred. Koehring Company v. Hyde Construction Company, Inc., 5 Cir., 1963, 324 F.2d 295. While having the right to do so under 28 U.S.C.A. § 1441(a), Koehring failed to remove the Chancery Court action to the federal court and instead, some months later, answered on the merits.

Having consented to the jurisdiction of the Chancery Court, Koehring nevertheless resisted exercise of that jurisdiction by other means. It first prevailed upon the Oklahoma federal district court to enjoin the Chancery Court proceedings. When this did not suffice to halt the Chancery Court, Koehring obtained another injunction from the Oklahoma district court enjoining Hyde's collection of the Chancery Court judgment which had been rendered in the interim. All of these injunction proceedings were held to be in violation of 28 U.S.C.A. § 2283 in Hyde Construction Company, Inc. v. Koehring Company, 10 Cir., 1968, 388 F.2d 501, cert. den., 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419.

Koehring also participated in civil and criminal contempt proceedings against Hyde and Dunn in the Oklahoma district court. The civil contempt charge against Hyde was vacated. 388 F.2d 501, supra. Dunn's conviction of the criminal contempt was reversed in order

---

[1]. 28 U.S.C.A. § 1292(b):

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . ."

that the district court might reconsider its decision to punish Dunn in light of the invalidity of the order which Dunn had violated, although the court specifically pointed out Dunn's wrongdoing in having violated the order. Dunn v. United States, 10 Cir., 1968, 388 F.2d 511. On remand, the district court dismissed all charges of contempt still pending.

At this point, Hyde again attempted to enforce the Mississippi judgment. Koehring, alleging fear of exposure to multiple claims, commenced an interpleader action in the District Court for the Eastern District of Wisconsin. That court granted a temporary injunction against enforcement of the Mississippi judgment. On appeal, the Seventh Circuit dissolved the injunction which had remained in effect pending disposition of the appeal. The dismissal of the interpleader action was affirmed. Koehring Company v. Hyde Construction Company, 7 Cir., 1970, 424 F.2d 1200. This action by the Seventh Circuit was on March 19, 1970, nearly ten years after Hyde instituted its suit. Hyde thereafter collected the Mississippi judgment. Meanwhile, the instant suits claiming abuse of process were filed in October, 1969.

## II.

The question of privilege which is presented must be decided on the basis of the peculiar facts of a claim of abuse of process through the conversion of the privileged matter from a shield into a sword. As will be seen, this gives rise to consideration of waiver concepts.

One sharply contested fact is whether Mr. Dunn represented to counsel for Koehring that the Chancery Court action was protective in nature in that it was to be maintained only in the event federal jurisdiction was lacking. It is contended by Hyde and Dunn that no such representation was made but that

Koehring asserted to the contrary in the various proceedings in the Oklahoma federal court in explanation of its failure to remove the chancery action.

An additional example of the claimed sword-like nature of the privileged matter is said to be Koehring's use of the federal court processes to its own end in provoking criminal contempt proceedings against Hyde and Dunn.

■ Having these facts in mind, we turn to the applicable law. This is a diversity case and in this connection it is settled that Mississippi law controls. This is for the reason that in diversity cases legislative created privileges must be treated as substantive.

There is unanimity among the circuits which have addressed the problem. Massachusetts Mutual Life Insurance Co. v. Brei, 2 Cir., 1962, 311 F.2d 463; Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623; Ranger, Inc. v. Equitable Life Assurance Society, 6 Cir., 1952, 196 F.2d 968; Palmer v. Fisher, 7 Cir., 1955, 228 F.2d 603. See also Hardy v. Riser, N.D.Miss., 1970, 309 F.Supp. 1234, which treats the physician-patient privilege in diversity cases as substantive; Annot., 95 A.L.R.2d 320 (cites contra decisions, all in district courts).

■ Next, we must inquire whether Mississippi under its choice of law rules would apply its own law of privilege or that of some other forum. Klaxon Co. v. Stentor Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. As we noted in Ramsay v. Boeing Company, 5 Cir., 1970, 432 F.2d 592, Mississippi has recently adopted the "center of gravity" test for choice of law in a wrongful death action. Mitchell v. Craft, Miss., 1968, 211 So.2d 509. In that case, the Mississippi court selected the law of the forum with the greatest interest in the controversy and in which the parties had the most significant relationships concerning the occurrences giving rise to the litigation.[2] We

2. The court quoted with approval § 175, Restatement (Second) of Conflict of Laws:

"§ 175. Right of Action for Death.
"In an action for wrongful death, the local law of the state where the in-

conclude that Mississippi would apply the *center of gravity test* to the instant tort litigation.

There are ample facts of record to allow a center of gravity determination. The prior litigation involved lawyers from five states and proceedings in state and federal courts located in six states as well as in the Supreme Court of the United States. As stated, the prior litigation had its inception in a breach of warranty suit. That breach involved equipment sold by Koehring, a Wisconsin corporation, to Hyde, a Mississippi corporation, for use in constructing a dam in Oklahoma. The original state and federal suits were filed in Mississippi. In those suits plaintiff was a resident of Mississippi and was represented by Mississippi counsel. Koehring also retained counsel in Mississippi. The harms alleged in the present suit from abuse of process were inflicted on Mississippi residents in Mississippi and Oklahoma, making Mississippi or Oklahoma the place where the tort occurred. The substantial portion of the litigation and Koehring's alleged involvement therein occurred in Mississippi or Oklahoma. Koehring's legal efforts were directed by house counsel located in Wisconsin.

Hyde and Dunn contend that the *center of gravity* is in Wisconsin. As will appear, the law of that state is more favorable to their position. Koehring opts for Mississippi law. There is no contention that Oklahoma was the center of gravity although in our view, Oklahoma comes nearer to being the center than Wisconsin. Given the facts which obtain, we are of the opinion that a Mississippi court would find that Mississippi had the most substantial contacts with the occurrences on which the alleged tort rests, and would apply Mississippi law to the present suits.

■ For purposes of this litigation we also believe that Mississippi would treat the attorney-client privilege as a substantive matter. It follows that the court would thus use the center of gravity test and apply Mississippi law to any such claim of privilege.[3]

### III.

■ This brings us to the Mississippi law of privilege. The attorney-client privilege is statutory. Mississippi Code of 1942, § 8665.[4] See also Russell v. State, 1939, 185 Miss. 464, 189 So. 90; Frierson v. Mississippi Road Supply Co., 1945, 221 Miss. 804, 75 So.2d 70.

There has been little elaboration by the Mississippi courts on the subject matter. However, two early decisions do contain considered dicta to the effect that the privilege may not be breached by the attorney even to testify as to intent and motive having to do with the fraudulent conveyance of property. See Parkhurst v. McGraw, 1852, 24 Miss. 134 and Lengsfield & Co. v. Richardson & May, 1876, 52 Miss. 443.

■ Here we are not presented with a transaction in the nature of the commission of a fraud or crime. Rather we must decide what the Mississippi Supreme Court would now hold on the question of privilege in the context of an alleged tort committed by counsel for or, as the alter ego of Koehring. As will be seen from the following reasoning, we believe that the Mississippi Supreme Court would preserve the privilege inviolate in tort confines but would permit disclosure in the event of waiver.

jury occurred determines the rights liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."

3. The same result would, of course, be reached if Mississippi treated the privilege as a matter of procedure and applied Mississippi law as the law of the forum.

4. § 8665. Duties of attorneys.
    (4) To maintain inviolate the confidence and, at every peril to themselves, to preserve the secrets of their clients.

Professor Wigmore states the essential elements of the privilege as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961). See also Rules 5–03, 5–11, Proposed Rules of Evidence for the United States District Courts.

We can assume privilege as to the documents in issue and proceed to the question whether the privilege obtains in Mississippi under circumstances of the client, arguendo, having sought legal advice relating to the commission of a tort.[5]

■ The general rule is that communications made by a client to his attorney during or before the commission of a crime or fraud for the purpose of being guided or assisted in its commission are not privileged. Garner v. Wolfinbarger, 5 Cir., 430 F.2d 1093 at 1102; Rule 5–03(d) (1) of Proposed Rules of Evidence for the United States District Courts.[6]

There is no Mississippi decision on the question of the privilege extending to the commission of a tort. Having the fraud cases in mind, *Parkhurst* and *Lengsfield,* supra, it would be a considerable expansion of Mississippi law for this court to hold that the Mississippi court would not follow those cases and would go one step further to also except the commission of a tort from the privilege. We decline to take this further step.

## IV.

We come then to a consideration of the position that the Mississippi courts would take in regard to waiver of the attorney-client privilege. In Jones v. State, 1888, 65 Miss. 179, 3 So. 379, the court recognized without elaboration that a witness in a criminal trial could waive his attorney-client privilege. Except for this case, we must rely on our own en banc decision in United States v. Woodall, 5 Cir., 1970, 438 F.2d 1317. In that case waiver was held to have occurred when a criminal defendant asserted a lack of knowledge as to the consequences of a sentence in an attempt to explain and invalidate an earlier guilty plea. We stated the following:

"Over 92 years ago the Supreme Court of the United States held that when one has entered upon such a line of defense it constitutes a waiver of the right to bar the reception of evidence as privileged. Hunt v. Blackburn, 128 U.S. 464, 9 S.Ct. 125, 32 L. Ed. 488 (1888). A leading text in the field of evidence arrives at the same conclusion. It notes that waiver by implication involves two basic elements. The first is subjective—Does the person holding the right to claim the privilege intend to waive it? The second element is objective—Is it fair and consistent with the assertion of the claim or defense being made to

---

5. Hyde and Dunn argue that the tort here is to be equated with fraud but we reject this assertion.

6. This exception is extended to cover communications with a lawyer in furtherance of "the purpose of committing a tort" in United States v. United Shoe Machinery Corp., D.C.Mass., 89 F.Supp. 357; Accord Uniform Rule of Evidence 26.

The United Shoe test has been embraced through dicta by federal district courts in Wisconsin. Dura-Corporation v. Milwaukee Hydraulic Products, Inc., E.D. Wis., 1965, 37 F.R.D. 470; Paper Converting Machine Co., Inc. v. FMC Corporation, E.D.Wis., 1963, 215 F.Supp. 249; hence plaintiffs' assertion of a Wisconsin center of gravity.

allow the privilege to be invoked? This objective determination should be based upon whether the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall cease even when, subjectively, he never intended that result. Thus, the text observes, a client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter stating: 'This is so because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.' 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2327 at p. 638. McCormick on Evidence, §§ 87 and 106, is in accord in principle."

The gravamen of plaintiffs' suits is that the communications between house counsel for Koehring and field counsel involved activities centering on an abuse of legal processes in two regards. These have been stated. By way of reiteration, they are the claims concerning the use in the Oklahoma federal court of the alleged representation of Dunn that the Chancery Court action was filed for protective purposes only; hence, explaining the failure to remove. The other relates to the involvement of counsel for Koehring in the criminal contempt proceedings.

■ The facts of record constitute, as they must if there is to be a waiver, a showing of affirmative use by Koehring of the Dunn representation for purposes of attack and not mere defense. The criminal contempt proceedings arose directly from the violation of the Oklahoma federal court order in which the alleged Dunn representation was indisputably used in some form and to some

extent. Those proceedings are thus so clearly related to and dependent upon the Dunn representation as to likewise fall under the waiver. We think the Mississippi courts would adopt and apply the waiver principle under these circumstances.

Whether the case can be made out for a fact finder on the merits is not the question before us. In order to warrant waiver, we need only find evidence which supports the contention of an affirmative or positive use of the privileged matter for purposes of attack as distinguished from a means of defense. *Woodall,* supra, 438 F.2d at p. 1324 citing Wigmore, Evidence. We thus hold that the district court did not err in applying the waiver doctrine.

We have made an independent examination of the 81 documents in question. We find no error in the decision reached by the district court as to the 33 documents which were held not privileged. Thus Koehring's appeal is without merit. The appeal of Hyde and Dunn involves a total of 48 additional documents. We find that all of these with the exception of those marked B(3), (4), (5), (6), (7), (10), (66), and (67) are likewise subject to the waiver principle. Each is related to the so-called Dunn representation or to the criminal contempt proceedings which had a direct nexus with that representation.[7]

The documents which are privileged and which are not to be made available to Hyde and Dunn are numbered above. These have no nexus whatever with the Dunn representation and its use for attack purposes. Nor do they relate to the contempt proceedings. They relate to the Chancery Court litigation brought by Hyde or to the Wisconsin federal court interpleader.

■ It is true that some of the documents were letters from one field coun-

---

7. It is to be noted that all of the documents and the component parts thereof remain subject to the rules of evidence relating to

admissibility such as those based on the lack of relevancy or materiality.

sel to another rather than to and from house counsel in Wisconsin. It is urged that these are not privileged in the first instance. We think, however, that the Mississippi statutory privilege would not be so fragmented or bifurcated as to apply only to house counsel correspondence where the several lawyers were participating in multi-state, multi-court litigation as a part of and in one common cause—representing Koehring in related suits. Cf. Rule 5–03(b), Proposed Rules of Evidence for the United States District Courts.

Costs are imposed as follows: three fourths on Koehring and one fourth on Hyde and Dunn.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.

GODBOLD, Circuit Judge (concurring in part, dissenting in part).

Assuming *arguendo* that the evidence was otherwise inadmissible, I agree that the District Court did not err in concluding that Koehring waived the attorney-client privilege. This would dispose of the case and we need go no further. However, the majority do go further and conclude that the evidence was inadmissible and is made admissible only because of waiver. I disagree with that conclusion and with the manner in which it is reached.

In considering, in a diversity case in federal court, a question of admissibility of evidence "[t]he answer will not come by any easy road leading to a destination marked 'substance' or 'procedure.'" Monarch Ins. Co. v. Spach, 281 F.2d 401

(5th Cir. 1960). I am not able to take that "easy road."

We are required to give effect to Rule 43, Fed.R.Civ.P., which provides that evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States in equity suits, or under the rules of evidence of the state, and the statute or rule which favors the reception of evidence governs.[1] Rule 43 is a rule of admissibility not of exclusion, and it broadens the scope of admissibility. *Monarch, supra,* 281 F.2d at 409 n. 20; Louisville & Nashville R. R. Co. v. Williams, 370 F.2d 839 at 844 n.13 (5th Cir. 1966); Dallas County v. Commercial Union Assur. Co., 286 F.2d 388 at 394 (5th Cir. 1961). If evidence is admissible under either standard, federal or state, Rule 43 requires it be admitted. Characterizing an evidentiary question as substantive makes it impossible, or futile, to inquire into federal standards, because the characterization of "substantive," plus *Erie,* is the end of the matter. A related problem arising from interplay of result by characterization versus Rule 43 arises where a state standard which is considered as substantive bars admissibility (as in the instant case), and a federal standard allows admission. If Rule 43 is applied, the evidence must be admitted. Yet to give effect to Rule 43 in this situation would violate the Rules Enabling Act,[2] which forbids adoption of rules that conflict with state substantive law.

Some cases which treat privilege as substantive simply create a way to escape the thrust of Rule 43, as, for example, by saying that the doctor-patient privilege is not an evidentiary matter at

---

1. Fed.R.Civ.P. 43:
   "(a) *Form and Admissibility* . . . All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of

evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs. . . ."

2. 28 U.S.C.A. § 2072.

all, or is something more than an evidentiary matter, part of the state's overall scheme for regulating the medical profession,[3] so that Rule 43 has nothing to do with it. Yet, as Wigmore points out,[4] the whole concept of privilege (largely unknown to the common law) grew up as a means to avoid the admissibility of evidence and in derogation of the basic principle of availability of evidence.

In the present case, as in other cases concerning admissibility, it seems to me correct to employ Rule 43 as the entry point rather than to avoid its impact. In this case the state rule does not make the evidence admissible but in fact affirmatively excludes it. Neither the federal statutes nor equity rules (either directly or by incorporation of state statutes)[5] make the evidence admissible, but they do not affirmatively exclude it. We turn then to the federal interest in marshalling the evidence for the trier of fact in this particular case. There are several federal interests—effective discovery procedures, alleged abuse of process of one or more federal courts, the fact that the alleged waiver springs from federal court interrogations (in which the Oklahoma federal court had the same interest in effective discovery), all of which call for admissibility. Balancing this strong federal nexus against the state interest in exclusion, and bearing in mind that the first and most important principle is availability to the court of information which the citizen has and also that the question comes upon discovery where materiality and relevancy are primary and admissibility only collateral, the federal interest should prevail and the evidence should be admitted. Rather than being violated (or ignored) Rule 43 will have been followed by favoring the rule (in this case, federal) allowing the reception of the evidence.

---

3. *E. g.*, Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463 (2 Cir. 1962).

4. 8 Wigmore, Evidence § 2192 (McNaughton ed. 1940).

5. See Moore's Federal Practice ¶ 43.07.