Vardaman S. DUNN, Plaintiff-Appellant,

v.

**KOEHRING COMPANY,**
Defendant-Appellee.

**HYDE CONSTRUCTION COMPANY, INC.,** Plaintiff-Appellee Cross Appellant,

v.

**KOEHRING COMPANY,** Defendant-Appellant Cross Appellee.

Nos. 75–1327, 75–1261.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1977.

Rehearing Granted In Part and Rehearing En Banc Denied April 25, 1977.

E. P. Lobrano, Jr., Jackson, Miss., for Koehring Co.

William E. Suddath, Jr., Jackson, Miss., for Hyde Const. Co., Inc.

Vardaman S. Dunn in pro. per.

Before GODBOLD and HILL, Circuit Judges, and SMITH,* District Judge.

GODBOLD, Circuit Judge:

This case is the latest adventure in a legal odyssey which has lasted for 15 years, fully five years longer than it took Ulysses to complete the original Odyssey. At least nine state and federal courts have been involved during the litigation between these parties, and numerous reported opinions have issued.[1]

---

* District Judge for the Northern District of Mississippi, sitting by designation.

1. *Koehring Co. v. Hyde Construction Co.,* 324 F.2d 295 (C.A.5, 1963); *Dunn v. Stewart,* 235 F.Supp. 955 (S.D.Miss., 1964); *Koehring Co. v. Hyde Construction Co.,* 253 Miss. 675, 172 So.2d 192 (1965); *Koehring Co. v. Hyde Construction Co.,* 254 Miss. 214, 178 So.2d 838 (1965); *Koehring Co. v. Hyde Construction Co.,* 253 Miss. 675, 178 So.2d 857 (1965); *Koehring* Co. v. Hyde Construction Co., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966), *rev'g. Hyde Construction Co. v. Koehring Co.,* 348 F.2d 643 (C.A.10, 1965); *Koehring Co. v. Hyde Construction Co.,* 254 Miss. 214, 182 So.2d 580 (1966); *Koehring Co. v. Hyde Construction Co.,* 254 Miss. 214, 184 So.2d 415 (1966); *Stewart v. Dunn,* 363 F.2d 591 (C.A.5, 1966); *Hyde Construction Co. v. Koehring Co.,* 388 F.2d 501 (C.A.10), *cert. denied,* 391 U.S. 905, 88 S.Ct.

In the present controversy Hyde Construction Company and its attorney Vardaman S. Dunn sued Koehring Company for abuse of process and malicious prosecution arising out of actions Koehring took during previous phases of the dispute between these participants. The trial court found Koehring responsible in tort to Hyde and assessed actual and punitive damages. We affirm the finding with some modifications. We reverse the lower court's holding that Koehring is not liable to Dunn.

### I. *The facts*

To understand the issues a survey of the facts is necessary.[2]

In December 1960 Hyde, a construction company, contracted with Koehring to build a concrete plant at a Hyde job site in Oklahoma. Following the completion of the plant by Koehring, problems arose with its operation, and in August 1961 Hyde sued Koehring for breach of warranty[3] in the United States District Court for the Southern District of Mississippi (the Mississippi federal court). Dunn was employed as Hyde's attorney for this suit. Koehring moved to dismiss for lack of jurisdiction and alternatively moved to transfer the case to the United States District Court for the Northern District of Oklahoma (the Oklahoma federal court). Shortly after

these motions by Koehring, Hyde filed the same action in the Chancery Court of Hinds County, Mississippi (the Mississippi state court). Hyde did this to be assured of a Mississippi forum in case the Mississippi federal court was found not to have jurisdiction.[4] Koehring elected not to remove the state court suit. This state action was set for trial at 2:00 p.m. March 11, 1964.

In September 1963 the Fifth Circuit, reversing a decision by the Mississippi federal court, ordered the federal case transferred to the Oklahoma federal court.[5] The transfer was made March 10, 1964.

On the morning of March 11, 1964, the Oklahoma federal court, upon Koehring's application, issued a temporary restraining order enjoining the proceeding in the Mississippi state court. Both Hyde's attorneys and the Mississippi state court received immediate notice of this TRO. Dunn, acting as Hyde's attorney, decided not to obey the TRO and asked the Mississippi state court to allow the trial to continue. On March 12 the request was granted and the trial continued. That same day Koehring filed a petition in the Oklahoma federal court charging Hyde and Dunn with willful defiance of the TRO.

At a show cause hearing[6] on March 14, the Oklahoma federal court found both Hyde and Dunn in civil contempt and, an-

---

1654, 20 L.Ed.2d 419 (1968); *Dunn v. U. S.*, 388 F.2d 511 (C.A.10, 1968); *Koehring Co. v. Hyde Construction Co.*, 424 F.2d 1200 (C.A.7, 1970); *Koehring Co. v. Hyde Construction Co.*, 236 So.2d 377 (Miss.1970); *Hyde Construction Co. v. Koehring Co.*, 455 F.2d 337 (C.A.5, 1972); *Hyde Construction Co. and Dunn v. Koehring Co.*, 387 F.Supp. 702 (S.D.Miss., 1974).

2. For a more extensive presentation of the facts, *see* the opinion of the district court in this case, *Hyde Construction Co. and Dunn v. Koehring Co.*, 387 F.Supp. 702, 706–11 (S.D. Miss., 1974).

3. Among other relief, Hyde asked for damages for breach of warranty and attachment against *Koehring's* resident debtors.

4. Hyde obtained jurisdiction in the Mississippi state court by use of a process known as chancery attachment, which was executed on Koehring debtors in Mississippi. A federal court in Mississippi would have jurisdiction of

such a suit on removal, thus assuring a Mississippi forum of some sort, absent a change of venue. On the other hand, the jurisdiction of the Mississippi federal court in the original suit filed by Hyde depended on the reach of the Mississippi long arm statute, which, at the time this suit was filed, might have been found not to sustain jurisdiction. *See Hyde Construction Co. and Dunn v. Koehring Co.*, 387 F.Supp. 702, 707 n. 4 (S.D.Miss., 1974).

5. *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295 (C.A.5, 1963).

6. Dunn, who had been served with the show cause order, did not appear at the hearing. Hyde, who was not served, was represented by counsel who did not remain for the entire proceeding. Prior to the show cause hearing an unsuccessful effort had been made to have the U.S. Court of Appeals for the Tenth Circuit stay the proceedings.

nouncing their criminal contempt was also involved, caused an order to be issued for Dunn's arrest. Dunn was arrested in Jackson, Mississippi, on March 18, 1964, and immediately sought habeas corpus relief from the Mississippi federal court. He was released on bail. The arrest order was later ruled void by the Mississippi federal court.[7]

Dunn continued with the trial of the case in Mississippi state court, and on April 8 the court found Koehring liable to Hyde in the amount of $464,450.08. Koehring appealed to the Mississippi Supreme Court. The judgment, slightly modified, was affirmed in 1965.[8]

Despite the finality of the Mississippi judgment, in early 1966 Koehring began attempting to relitigate the breach of warranty action, by way of counterclaim in the Oklahoma federal court, and filed interrogatories and took depositions. Hyde's plea of res judicata was rejected by the Oklahoma federal court, but the proceedings were stayed by the Tenth Circuit and the res judicata issue was remanded to the Oklahoma federal court[9] where Koehring abandoned its counterclaim.

Meanwhile, the contempt proceedings against Hyde and Dunn proceeded apace in Oklahoma. In September 1964 the Oklahoma federal court enjoined Hyde from collecting the Mississippi judgment it had against Koehring, ordered the case retried in the Oklahoma federal court, and levied a civil contempt judgment against Hyde and Dunn in favor of Koehring.[10]

In July 1965 the Tenth Circuit held that the Oklahoma federal court was without jurisdiction to issue the TRO or to punish for its violation and vacated the TRO and contempt judgments.[11] However, the next year the United States Supreme Court reversed the finding and said that the Oklahoma federal court had jurisdiction.[12]

In June 1966 the Fifth Circuit reversed the Mississippi federal court's habeas corpus order releasing Dunn from custody.[13] In July 1966 Dunn was charged, and in August 1966 convicted, of criminal contempt. On appeal the Tenth Circuit, in January 1968, held the TRO was invalid because it violated the Anti-Injunction Act,[14] and reversed Dunn's conviction.[15] In August 1968 the Oklahoma federal court dismissed the criminal charge against Dunn.

In a related but separate opinion in January 1968, the Tenth Circuit, having found the TRO invalid, vacated the injunction which prohibited Hyde from collecting its judgment and which awarded Koehring damages in civil contempt.[16]

Thus, all civil orders entered against Hyde and Dunn by the Oklahoma federal court and all criminal matters against Dunn were eventually nullified or dismissed.

7. *Dunn v. Stewart*, 235 F.Supp. 955 (S.D.Miss., 1964).

8. *Koehring Co. v. Hyde Construction Co.*, 254 Miss. 214, 178 So.2d 838 (1965); *Koehring Co. v. Hyde Construction*, 253 Miss. 675, 178 So.2d 857 (1965). The Mississippi Supreme Court upheld the state court's jurisdiction to hear the case regardless of the existence of the federal action.

9. *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501 (C.A.10, 1968).

10. The judgment was for $9,009.80 and was to defray litigation expenses.

11. *Hyde Construction Co. v. Koehring Co.*, 348 F.2d 643 (C.A.10, 1965).

12. *Koehring Co. v. Hyde Construction Co.*, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966). Neither the Tenth Circuit nor the Supreme Court reached the issue of the power of the district court to enjoin the state court proceedings.

13. *Stewart v. Dunn*, 363 F.2d 591 (C.A.5, 1966).

14. 28 U.S.C. § 2283.

15. *Dunn v. U. S.*, 388 F.2d 511 (C.A.10, 1968). Although the invalidity of the TRO did not destroy the criminal contempt conviction, the Tenth Circuit reversed because the conviction was based on an assumption that the TRO was valid, and the district court, the Tenth Circuit held, should have an opportunity to decide whether Dunn should be punished for disobeying an invalid order.

16. *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501 (C.A.10), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968).

However, the battle was not over. In fact, not even a cease fire had gone into effect.

In April 1966, pursuant to a Koehring affidavit, a criminal contempt charge had been initiated against Hyde in the Oklahoma federal court. Nothing was done on this charge until after the Tenth Circuit's decision in January 1968 vacating the previous civil and criminal contempt convictions and the injunction. In May 1968 Koehring filed a petition in the Oklahoma federal court saying that Hyde's only asset was the unpaid Koehring judgment. Koehring paid into the Oklahoma federal court at this time the amount of the Mississippi judgment. Koehring argued that a fine in the amount of the Mississippi judgment should be imposed and paid to Koehring. The Oklahoma federal court ordered the money returned to Koehring and dismissed Koehring's petition but left the criminal contempt charge against Hyde pending. The charge was never tried and was finally dismissed in March 1969.

Hyde attempted to collect the Mississippi judgment in May 1968. On May 27, 1968, Koehring filed an interpleader action in the United States District Court for the Eastern District of Wisconsin, saying that as a judgment debtor to Hyde it was confronted with conflicting claims and that it had a potential claim to this judgment by way of an allocation of a fine upon conviction of Hyde for criminal contempt.[17] This action was dismissed by the district court, and the dismissal was affirmed by the Seventh Circuit [18] although Hyde had been enjoined from collecting its judgment until after the decision by the Seventh Circuit.

During the same period as the interpleader, the Mississippi state court, pursuant to a petition by Hyde, which had become insolvent, set up a receivership to take charge of Hyde's assets and determine the priority of its creditors. Koehring challenged this re-

ceivership in Mississippi state court, lost, and appealed to the Mississippi Supreme Court the denial of its challenge and the decree setting up the priority of creditors. Koehring gave up the appeal when the Seventh Circuit dismissed the interpleader action.

Koehring then paid the judgment to Hyde's receiver, six years after the judgment was rendered.

This suit charging abuse of process and malicious prosecution followed the payment of that judgment.

The claims of Hyde and Dunn against Koehring will be discussed separately. First, a preliminary question concerning the statute of limitations must be dealt with.

## II.  Statute of limitations

■ Koehring urges on appeal that the actions by Hyde and Dunn are barred by the Mississippi statute of limitations for intentional torts and that the district court erred by applying an incorrect Mississippi limitation standard. It is unnecessary to consider whether the Mississippi limitation period for intentional torts is applicable because this limitation was never properly before the district court. Statutes of limitations are affirmative defenses and must be pleaded. Fed.R.Civ.P. 8(c). Koehring did not include the defense of the Mississippi statute of limitations in any of its pleadings. Pleadings may be amended only by leave of the court, Fed.R.Civ.P. 15, and, while such leave is to be "freely given when justice so requires," it is within the discretion of the trial court. *E. g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Freeman v. Continental Gin Co.*, 381 F.2d 459 (C.A.5, 1967). Koehring moved to amend its pleadings to assert the bar of the Mississippi limitation on the morning of tri-

---

17. Koehring made this assertion despite the fact that when the interpleader action was filed the Oklahoma federal court had already dismissed Koehring's petition asking for an allocation to it of any fine imposed on Hyde and had ordered the money Koehring had paid into the court (the amount of the Mississippi judgment) returned. However, as noted above, the criminal contempt charge against Hyde was still pending.

18. *Koehring Co. v. Hyde Construction Co.*, 424 F.2d 1200 (C.A.7, 1970).

al, *Hyde Construction Co. and Dunn v. Koehring Co.*, 387 F.Supp. 702 at 712 n. 17 (S.D.Miss., 1974), some five years after the action had been filed and after more than four years of extensive pretrial preparation. After a hearing, the district court, in the exercise of its discretion, denied the motion for leave to amend because of "cogent equitable considerations." There was no abuse of discretion. We affirm on this issue.

### III. *Koehring's liability to Hyde*

■ The district court made an exhaustive survey of the Mississippi law on the distinct but often overlapping torts of abuse of process and malicious prosecution. The parties agreed that the trial judge's survey is substantially correct, and it need not be repeated at length here.[19] After a review of the monumental trial record, the court concluded that Koehring was liable to Hyde for both malicious prosecution and abuse of process. 387 F.Supp. at 721–26. We affirm that conclusion.

The trial court found three separate series of acts each of which constituted an improper use of civil process. *Id.* at 724–26. First, in 1966 Koehring began attempts, by means of counterclaim, to relitigate the original contract action in the Oklahoma federal court although a final judgment on the merits of this case had already been entered by the Mississippi Supreme Court. Second, in 1968, when Hyde began attempts in Mississippi to collect on its then four-year old judgment, Koehring filed the interpleader action in federal court in Wisconsin claiming exposure to Hyde's creditors. The

Seventh Circuit, on appeal, characterized this action as "ill founded if not a sham." [20] There is little doubt that it was undertaken for delay and harassment. Third, in 1969 Koehring objected to the receivership created by Hyde's creditors in Mississippi state court "without apparent purpose other than to frustrate those proceedings," 387 F.Supp. at 725, and even appealed an adverse ruling on this matter to the Mississippi Supreme Court.

In addition to these misuses of civil process, the district court found that in 1966 Koehring had caused criminal proceedings to be launched against Hyde for Koehring's private gain and thereafter had been instrumental in these proceedings in the hope of securing some or all of any fine levied on Hyde for criminal contempt. This, the trial court reasonably found, constituted an unlawful resort to criminal process. *Id.* at 723–24.

Finally, the district court tied these actions into the torts alleged:

> Koehring's resort to judicial process as a club or form of extortion constitutes abuse of process, while Koehring's initiation of the several judicial proceedings against Hyde, most spectacularly the charge of criminal contempt, satisfied the element essential to malicious prosecution.

387 F.Supp. at 726.

Koehring's only substantial attack on the finding of liability to Hyde is that it is not supported by sufficient evidence. The evidence is more than adequate under Fed.R.

---

**19.** *See* 387 F.Supp. at 711–14 and cases cited therein. Abuse of process is defined in Mississippi jurisprudence as "the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages." Malicious prosecution is said to be "the initiation of unsuccessful civil or criminal judicial proceedings with malice and without probable cause and with resulting damage."

The district court pointed out the major differences between the two actions:

(1) it is necessary that the prosecution or action has ended before a suit for malicious prosecution may be brought while there is no

such requirement for abuse of process; (2) malicious prosecution is based on the issuance of process while abuse of process is concerned with the use of the process; (3) the element of probable cause is necessary in malicious prosecution and irrelevant in abuse of process.

The court below also noted the similarities of the two actions:

(1) in both the defendant must have acted with an intent not in accord with the proper purpose of invoking the judicial process; (2) in both intent may be inferred, and (3) the same act may give rise to a cause of action under both tests.

**20.** *Koehring Co. v. Hyde Construction Co.*, 424 F.2d 1200, 1204 (C.A.7, 1970).

Civ.P. 52(a). We agree with the trial court's characterization of Koehring's actions as "incredible as they are indefensible" and thus find Koehring's argument to be totally without merit. The finding of liability to Hyde is affirmed.

## IV. Damages to Hyde

■ (A.) *Compensatory damages.* The parties stipulated that Hyde's compensatory damages would be limited to its legal and other expenses dealing with all litigation collateral to the main, original breach of contract action. This amount was agreed to be $242,005.79, which covered the period between March 11, 1964, the date of the issuance of the TRO by the Oklahoma federal court, to March 25, 1970, when Koehring paid the original judgment to the chancery receiver acting for Hyde.

The district court accepted this calculation of damages but reduced the total by the amount of $80,668.59,[21] reasoning that Koehring was "legally faultless" for the first two years and only began to be liable for damages to Hyde upon the institution of criminal contempt proceedings against Hyde in the Oklahoma federal court on April 7, 1966. By cross-appeal, Hyde attacks this reduction. We hold that the district court erred in finding Koehring legally blameless for the first two years. Hyde was entitled to judgment for the full stipulated amount of $242,005.79.

For several reasons, Hyde is entitled to damages for the entire six-year period. The district court found that "[d]uring this six-year odyssey, the Hyde-Koehring litigation was ongoing and perpetual, requiring, we believe, a relatively constant expenditure for legal services throughout the entire period." 387 F.Supp. at 726. Koehring actually began the collateral litigation when it obtained the TRO against Hyde and Dunn from the Oklahoma federal court on March 11, 1964. The trial court found that this TRO was tainted. The taint arose from Koehring's having obtained the TRO by a misrepresentation. To justify seeking emergency relief from the Oklahoma state court rather than simply removing Hyde's Mississippi state court case to federal court in Mississippi, Koehring asserted to the Oklahoma federal court that Dunn had represented to it that the Mississippi case was merely a "protective suit" which would never be tried. The district court found that "[c]redible evidence would support a finding that Dunn made no such misrepresentation and did not mislead Koehring in any manner concerning removal, and also that Koehring's attorneys knowingly made the false charge [to the Oklahoma federal court] without an adequate factual basis."[22] 387 F.Supp. at 720. This improperly procured TRO was the seed from which the entire collateral litigation grew. Because of the manner in which Koehring obtained this TRO, the wellspring of much of the collateral litigation, Koehring cannot be said to have been "legally faultless" for a period of two years after its issuance. Damages should have been awarded beginning at the time the TRO was issued.[23]

---

**21.** The district court arrived at this total by assuming a "relatively constant expenditure" during this entire six-year period. Thus each year's expenditure was fixed at $40,334.30, making the first two years' expenditures amount to $80,668.59. 387 F.Supp. at 726.

**22.** This circuit, in an interlocutory appeal of this case, has also spoken to this taint: "The criminal contempt proceedings arose directly from the violation of the Oklahoma federal court order [the TRO] in which the alleged Dunn representation [to the effect that the Mississippi case would never be tried] was indisputedly used in some form and to some extent." *Hyde Construction Co. v. Koehring Co.,* 455 F.2d 337, 343 (C.A.5, 1972).

**23.** Koehring took several other actions in the time between the issuance of the TRO and the institution of criminal contempt proceedings against Hyde two years later. While these show that Koehring's tortious conduct was unabated during this time span and resulted in damages to Hyde, most of these actions grew out of the TRO and need not be explored in detail here. They included: petitioning the Oklahoma federal court on March 12, 1964, to punish Hyde for contempt of the TRO; seeking in April 1964, and obtaining in September 1964, an injunction against Hyde's collecting its Mississippi state court judgment—this was based at least partially on Koehring's false claim concerning Dunn's alleged misrepresentation; de-

**(B.)** *Punitive damages.* The district court awarded Hyde $200,000 punitive damages for Koehring's "wanton and willful misconduct." 387 F.Supp. at 726–7. Federal courts in diversity cases follow state law on the right to punitive damages. *Spires v. North American Acceptance Corp.*, 383 F.2d 745 (C.A.5, 1967); 1A Moore's Federal Practice (Pt. 2) ¶ 0.310. Mississippi law authorizes punitive damages "if the wrongful conduct is intentional or if it results from such gross disregard for the rights of the complaining party as to amount to willfulness on the part of the wrongdoer." *Roberts v. Pierce*, 398 F.2d 954, 957 (C.A.5, 1968); *Lee v. Southern Home Sites Corp.*, 429 F.2d 290 (C.A.5, 1970); *Atkinson v. Dixie Greyhound Lines*, 143 F.2d 477 (C.A. 5.), *cert. denied*, 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 (1944); *Illinois Central R. Co. v. Ramsay*, 157 Miss. 83, 127 So. 725 (1930); *Woodall v. Ross*, 317 So.2d 892 (Miss.1975).

The district court found Koehring's conduct fit the Mississippi test for punitive damages. We agree that Koehring's acts were egregious enough to justify punitive damages.

**(C.)** *Interest.* In its cross-appeal, Hyde asks that prejudgment interest be allowed as part of its compensatory damages. The district court did not include such interest in its award. This too is to be decided under state law. *E. g., Petersen v. Klos*, 433 F.2d 911 (C.A.5, 1970); *Texaco, Inc. v. Lirette*, 410 F.2d 1064 (C.A.5, 1969). We believe that under Mississippi law the award of prejudgment interest rested in the discretion of the awarding judge. *Commercial Union Insurance Co. v. Byrne*, 248 So.2d 777 (Miss.1971); *Charles Stores, Inc. v. Aetna Insurance Co.*, 327 F.Supp. 525 (N.D. Miss.1971), *aff'd*, 490 F.2d 64 (C.A.5, 1974); *Kelly v. Smith*, 346 F.Supp. 20 (N.D.Miss. 1972), *aff'd on other grounds*, 485 F.2d 520 (C.A.5, 1973). We cannot say this discretion was abused.

### V. *Koehring's liability to Dunn*

The district court held Koehring not liable to Dunn for either malicious prosecution or abuse of process. 387 F.Supp. at 721. On the malicious prosecution claim, it found that Dunn's actions, and not Koehring's, were the primary cause of his injuries; that Koehring's acts attempting to have Dunn punished for defying the TRO of the Oklahoma federal court were legitimate attempts to obtain civil contempt sanctions and not wrongful attempts to initiate criminal sanctions; and that even if Koehring did cause criminal process to be issued against Dunn it had probable cause for so doing which was borne out by Dunn's conviction for criminal contempt. *Id.* at 717–20. Concerning abuse of process, the district court held that Koehring did not misuse any processes issued, could not be held liable for any defamatory matter it caused to be presented to the Oklahoma federal court, and did not act improperly in its intrusion into the government's prosecution of Dunn for contempt. *Id.* at 720–21. The lower court also found "legally irrelevant" Dunn's claim that Koehring's harassment of Hyde was designed to harm Dunn as well as Hyde because Dunn had a large financial stake in the outcome of the Hyde litigation. *Id.* at 721 n.37.

We affirm the conclusion of the district court that not all of the essential elements for malicious prosecution were present because Koehring had probable cause to initiate contempt proceedings against Dunn, and because the criminal contempt proceedings, at least initially, were successful. 387 F.Supp. at 719–20.[24]

The district court was incorrect in its conclusion that Koehring committed no abuse of process against Dunn. The principal abuse was Koehring's effort to injure Dunn by use of harassing criminal and civil processes against Hyde to prevent collection of Hyde's Mississippi judgment.

---

ciding in November 1965 to attempt to have criminal contempt charges brought against Hyde and, as a basis for this, having Koehring's Oklahoma attorney execute an affidavit in December 1965 charging Hyde with criminal contempt.

**24.** *See also id.* at 713 and footnote 19, *supra*. It is unnecessary to reach or comment upon the lower court's other grounds for its result on malicious prosecution.

Hyde had become insolvent early in the Koehring litigation (by the spring of 1964) and had as its only asset the Mississippi state court judgment against Koehring. Because Hyde lacked other assets, Dunn was forced to depend on the collection of the Koehring judgment for compensation for his legal services and expenses. Thus, in practical terms, for economic purposes, Dunn and Hyde became alter egos.

The Mississippi Supreme Court addressed the issue in a previous reincarnation of this case:

> The testimony reflects without contradiction that the attorney-client relationship began at a time when Hyde Construction Company, Inc., was solvent and began on a reasonable fee basis, but that Hyde Construction Company, Inc., became insolvent during the course, of the litigation and was subsequently unable to fulfill any fee obligation since its assets had been assigned to USF&G. The only reasonable expectation of a fee thereafter rested upon, and solely upon, the ultimate recovery of a judgment against Koehring. In fact, complainant's attorneys engaged in difficult litigation at the risk of loss of labor and money since they had assumed financial obligations necessary to carry on the litigation. . . .
> The risk of loss, labor and personal finances by the attorneys, was great.

*Koehring Co. v. Hyde Construction Co.,* 236 So.2d 377, 385–86 (Miss.1970).

Anything done to prevent Hyde from collecting the Koehring judgment would, of necessity, harm Dunn. There is little doubt that one of Koehring's primary goals, if not its only goal, in its moves against Hyde was to harm Dunn and that Koehring knew its actions against Hyde would have direct, adverse consequences to Dunn. Koehring's intentions were made plain in correspondence between Koehring's house counsel and one of Koehring's Oklahoma attorneys. In a letter dated November 5, 1965, the house counsel wrote the Oklahoma attorney relating that Hyde was insolvent, that Dunn, by an assignment from Hyde, was the primary party in interest in any recovery made on the judgment against Koehring and was dependent on the judgment for the payment of his attorney's fee. In a memorandum dealing with citing Hyde for contempt (which accompanied this letter), house counsel suggested that Dunn "can only be punished" by citing for contempt Hyde and its assignees as well.

Because of the assignment from Hyde to Dunn, Dunn became in reality, Koehring's target. Hyde, as an assignor, was effectively removed from the picture and Dunn was placed in Hyde's position for all practical purposes. Once this assignment was made and Koehring became aware of it there was little, if any, reason for Koehring to attempt to pursue Hyde except to harm Dunn.

There is other evidence of Koehring attempting to harm Dunn through Hyde as follows. Koehring refused any settlement with Hyde unless, as a condition to any agreement, it was specified that Dunn get nothing from any such settlement.

Also, throughout the criminal contempt action against Hyde, Koehring attempted to get any fine levied against Hyde assigned to it and attempted to have a fine assessed in the amount of its Mississippi judgment to Hyde. 387 F.Supp. at 723–24. At a pretrial hearing on the Hyde criminal contempt action, the Oklahoma district judge suggested that Hyde and Koehring somehow "settle" this criminal matter. Koehring's Oklahoma attorney stated that what Koehring wanted was to get back as much money as it could from Koehring and to keep Dunn from getting any money at all from Koehring directly or indirectly.

Thus, at least part of Koehring's motivation in attempting to have Hyde found in criminal contempt of the Oklahoma federal court and in trying to have any fine levied against Hyde be in the amount of Hyde's Mississippi judgment and allocated to Koehring, was Koehring's desire to harm Dunn through his assignor and economic alter ego Hyde. The intent to harm Dunn was inextricably part of Koehring's efforts

in trying to avoid Hyde's Mississippi judgment against it by various, and sometimes almost incredible means.[25]

■ Therefore Koehring's legal actions, though directed in an initial sense against Hyde, were designed and carried out for the purpose of injuring Dunn. This constituted an abuse of process by Koehring against Dunn.

Koehring also took other actions directly against Dunn which constituted abuse of process. Following the institution of contempt charges against Dunn in the Oklahoma federal court,[26] Koehring actively participated in every stage of what either began as, or rapidly turned into, criminal contempt proceedings.[27]

Koehring's participation in the initiation of contempt proceedings against Dunn and in the initial show cause hearing on the contempt charge were legitimate attempts to invoke civil sanctions against Dunn. However, in what became a criminal proceeding, Koehring aided the Department of Justice in the appeal to the Fifth Circuit of Dunn's habeas corpus release from the arrest order issued by the Oklahoma federal court after the show cause hearing. Later, at Dunn's contempt trial in the Oklahoma federal court, one of Koehring's attorneys appeared as an advisor or consultant to the U.S. Attorney trying the case, sat with him at the prosecution table and counseled him during the trial. Also, Koehring urged the U.S. Attorney and the Oklahoma federal

court to try Dunn with a jury so that more than a nominal fine could be imposed in the event of conviction. 387 F.Supp. at 721.

■ As the district court found, Koehring might have had a legitimate interest in obtaining civil contempt sanctions against both Hyde and Dunn, 387 F.Supp. at 718, for disobeying the TRO, but when the action against Dunn became manifestly criminal Koehring's zeal in aiding the prosecution of the charge crossed the boundaries of abuse of process. Seemingly, Koehring's only reasons for aiding in Dunn's prosecution were either a desire to see Dunn personally punished or to use this prosecution as a means to gain an advantage in the Mississippi suit for breach of warranty. Either reason would be a use of criminal process "to accomplish an ulterior purpose for which it was not designed." [28]

We hold that Koehring is liable to Dunn for abuse of process and remand this part of the case to the district court for a determination of damages.

Summarizing, the judgment in favor of Hyde against Koehring is affirmed with modifications. The judgment in favor of Koehring on Dunn's claim is reversed and the cause remanded for assessment of damages.

AFFIRMED in part, as modified, REVERSED in part and REMANDED for further proceedings not inconsistent with this opinion.

---

**25.** Including attempts to relitigate the case in Oklahoma, filing the interpleader action in Wisconsin federal court, and challenging the receivership created by Hyde's creditors in Mississippi.

**26.** Koehring helped institute these contempt charges by drafting a complaint which asked that Dunn be "punished for contempt."

**27.** The Oklahoma federal court announced at the first show cause hearing for contempt against Dunn on March 14, 1964, that "this is a criminal contempt proceeding." The Fifth Circuit held that the Oklahoma proceeding, consisting of a petition to cite for contempt, affidavit and show cause order were adequate to meet the procedural requirements of Rule 42,

Fed.R.Crim.P., for the court to entertain criminal contempt proceedings and issue the order for Dunn's arrest. "The language used in those documents, especially the characterization in the petition of appellee's action as a 'wilful, intentional, and contemptuous disregard' of the court's order, was clearly sufficient under *United Mine Workers* [330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)] to inform appellee that criminal contempt was charged. Furthermore, in opening the proceedings on March 14, 1964, Judge Barrow announced that 'this is a criminal contempt proceeding.'" *Stewart v. Dunn,* 363 F.2d 591, 599–600 (CA5, 1966).

**28.** Prosser, Law of Torts, 3d ed., § 115.