[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11640

_____

D. C. Docket No. 06-01669-CV-AR-S

CLASSROOMDIRECT.COM, LLC,

Plaintiff-Counter-Defendant-Appellee,

versus

DRAPHIX, LLC,

Defendant-Counter-Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 23, 2008)**

Before HULL and PRYOR, Circuit Judges, and MOORE,[*] District Judge.

PER CURIAM:

---

[*]Honorable K. Michael Moore, U.S. District Judge for the Southern District of Florida, sitting by designation.

Appellant and Counter-Claimant Draphix, LLC ("Draphix") appeals the district court's dismissal of its "abuse of process" counterclaim, brought under Alabama law, against Appellee and Counter-Defendant ClassroomDirect.com, LLC ("Classroom"). After review and oral argument, we affirm.

## I. BACKGROUND

Classroom, a seller of school supplies, filed (and continues to litigate) a series of lawsuits against its competitor and former licensee, Draphix. This appeal arises out of an abuse of process counterclaim filed by Draphix in the most recent of Classroom's lawsuits against Draphix. Because Draphix's abuse of process counterclaim is based on the prior litigation between Classroom and Draphix, we first briefly recount the litigation history between the two companies. We then summarize Classroom's current lawsuit and Draphix's counterclaim as brought in that lawsuit.

### A. Prior litigation

### 1. The first federal action

In April 2005, Classroom filed a trademark infringement lawsuit against Draphix in the U.S. District Court for the Northern District of Alabama (the "first federal action"). Draphix, then known as "Re-Print/Draphix, LLC," had circulated a school-supply catalog that used the name "Teacher Direct" in conjunction with

2

various marketing elements. Classroom sued, asserting that Draphix's use of the "Teacher Direct" name was likely to cause confusion with, and had in fact caused confusion with, Classroom's "Classroom Direct" products, in violation of (1) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and (2) Alabama unfair competition law. See ClassroomDirect.com, LLC v. Re-Print/Draphix, LLC, No. CV-05-AR-0853-S, Docket Entry No. 1 (N.D. Ala. Apr. 25, 2005). In July 2005, the parties settled the first federal action pursuant to a settlement and release agreement, and the case was dismissed with prejudice.

## 2.    The state court action

In August 2005, Classroom filed suit against Draphix in Alabama state court (the "state court action"). The state court action was based upon Draphix's purported breach of the settlement agreement in the first federal action. According to Draphix, the state court action proceeded to trial on Classroom's claims of unfair competition, breach of contract, fraud, and tortious interference with business relations.

The jury returned a general verdict in favor of Classroom in the state court action, awarding compensatory damages in the amount of $175,000.[1] In response to a special interrogatory, the jury assigned $150,000 of its verdict to Classroom's

---

[1]Classroom's complaint in the state court action sought over $5,000,000 in compensatory and punitive damages.

unfair competition claim. Classroom filed post-trial motions in the state court action, seeking, <u>inter alia,</u> a permanent injunction prohibiting Draphix from using the "Teacher Direct" mark in any form and prohibiting Draphix from adopting any name containing the words "Direct" or "Teacher."  In support of its post-judgment motions, Classroom pointed to evidence introduced at trial, including a declaration submitted by Draphix as part of registration efforts before the U.S. Patent and Trademark Office ("USPTO") for the mark "Teacher Direct."  Classroom contended in the state court action that Draphix had lied in making the declaration.

In December 2006, the state court "partially granted and partially denied" Classroom's motion for permanent injunction.  The state court determined that Classroom "demonstrated a likelihood of success on the merits" and showed that "without some relief it may suffer irreparable injury"; however, the state court also determined that the "sweeping injunction" requested by Classroom would "outweigh the harm that it would cause" Draphix.  <u>See</u> <u>ClassroomDirect.com, LLC</u> <u>v. RePrint/Draphix, LLC</u>, No. CV 05-4675-GWN, slip. op. at 2 (Ala. Cir. Ct. Dec. 22, 2006).  Accordingly, the state court held that Draphix would be

> allowed to continue to use the name Teacher Direct, provided that it shall cause to be placed on the front cover of every catalog issued hereafter a disclaimer, declaring in bold, plain language and prominently displayed, a statement to the effect that it is not, nor is any of its employees or spokespersons affiliated or connected in any way whatsoever with Classroom Direct and is in fact, a direct

4

competitor of Classroom Direct.

Id.[2]

## B.    This lawsuit – the second federal action

In August 2006, approximately one year after filing the state court action, and while the state litigation remained ongoing, Classroom filed its third lawsuit against Draphix, again in the U.S. District Court for the Northern District of Alabama (the "second federal action").  In its initial complaint in the second federal action, Classroom alleged (1) breach of contract, and (2) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).  The contract allegedly breached in the second federal action was a "Service Mark License Agreement" between Classroom and Draphix, pursuant to which Draphix had been authorized to use Classroom's federally registered service mark "Re-Print."[3]

---

[2]The state court also granted Classroom's "Motion for Additional Monetary Recovery," awarding Classroom "an additional monetary award of $269,758.00 . . . in addition to the $175,000.00 previously awarded by the jury." ClassroomDirect.com, No. CV 05-4675-GWN, slip op. at 3.  The state court denied Classroom's motion for attorney's fees, but awarded Classroom half of its outstanding costs, in the amount of $13,803.17. Id. at 4.

[3]According to Classroom's complaint in the second federal action, Classroom, which had previously been known as The Re-Print Corporation, sold certain of its assets to Draphix in 2001.  See ClassroomDirect.com, LLC v. Re-Print/Draphix, LLC, No. CV-06-AR-1669-S, Docket Entry No. 1, at 4 (N.D. Ala. Aug. 23, 2006).  Draphix was founded in 2001 by a former Classroom employee, at which time it was known as Re-Print/Draphix, LLC. Id.  At the time of the asset sale, the parties entered into the Service Mark License Agreement, which gave Draphix certain rights to use Classroom's "Re-Print" service mark. Id.

In January 2007, approximately one month after the final order in the state court action, Classroom amended its complaint in this second federal action.  The amended complaint added a third count, "fraudulently procuring trademark registration," for alleged violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120.  The bases for this fraudulent procurement claim were Classroom's allegations that when Draphix procured its federal registration for the "Teacher Direct" mark, (1) Draphix "suppressed documents material to its trademark application from the USPTO" and (2) Draphix's CEO "made a false or fraudulent declaration to the USPTO."  ClassroomDirect.com, LLC v. Re-Print/Draphix, LLC, No. CV-06-AR-1669-S, Docket Entry No. 14, at 22 (N.D. Ala. Jan. 18, 2007).

## C.     Draphix's counterclaim

In February 2007, Draphix filed a "First Amendment to Answer and Counterclaim" in this second federal action.  Therein, Draphix denied the majority of Classroom's allegations and asserted various affirmative defenses, including, inter alia, "waiver, unclean hands, estoppel, res judicata, comity and abstention." Id., Docket Entry No. 17, at 16 (N.D. Ala. Feb. 12, 2007).  Draphix further asserted its abuse of process counterclaim, which is the subject of this appeal.

In the counterclaim, Draphix alleges that Classroom "is intent on litigating

6

Draphix and its Teacher Direct educational supplies brand out of existence." Id. at 19. According to Draphix, "[t]he same facts that underlie Classroom Direct's claim for 'fraudulent procurement' of the Teacher Direct mark were before both the State Court and the impaneled jury as part of Classroom Direct's Lanham Act and unfair competition claims" brought in the state court action. Id. Draphix alleges that Classroom "made the allegedly fraudulent declaration" of Draphix's CEO "a centerpiece of its closing arguments" in the state court action, and Draphix further alleges that the jury and the state court "weighed the merits of that evidence" and accounted for it in the monetary and injunctive relief awarded to Classroom in the state court action. Id. at 19-20.

Draphix asserts that Classroom's amended complaint in this second federal action—specifically, the fraudulent procurement claim in count three of Classroom's amended complaint—constitutes abuse of process under Alabama law. Draphix alleges (1) that Classroom's fraudulent procurement claim is merely an attempt to "rethread" its unfair competition claim from the state court action as a violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120, and (2) that Classroom is "yet again" attempting to "deny Draphix the continued use of the Teacher Direct mark even though the State Court declined to grant just such injunctive relief." Id. at 23. According to Draphix, Classroom engaged in abuse of

7

process by causing "regularly issued civil process that compels both the performance and forbearance of a prescribed act, namely Draphix's continued use of the mark Teacher Direct." Id. at 24.

Classroom moved to dismiss Draphix's abuse of process counterclaim, and the district court granted the motion, determining that the facts as alleged by Draphix could not "constitute an Alabama claim of abuse of process."[4] The district court expressly certified its judgment as final pursuant to Federal Rule of Civil Procedure 54(b), determining that "there is no just reason for delay," and Draphix now appeals.[5]

## II. STANDARD OF REVIEW

[4]The district court initially granted Classroom's motion to dismiss before Draphix filed a response brief (apparently because the district court never issued a briefing schedule for the motion and the motion was never set on the motions docket). Draphix then filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), and the district court conducted a hearing, at which the district court stated: "I should have let you brief it. I should have done that. I didn't do it. And now we're briefing it after the fact, is what we're doing, and we're arguing it after the fact." See Draphix Br. at 7. The district court then issued a second order denying Draphix's Rule 59(e) motion, in which the district court stated that "as a result of Draphix's brief and oral argument, the court now can better understand Draphix's theory supporting a claim of abuse of process, [but] the court still does not believe the facts as alleged, or as they might be amended, can constitute an Alabama claim of abuse of process."

[5]We have jurisdiction over Draphix's appeal pursuant to 28 U.S.C. § 1291 because the district court properly certified its judgment as final under Rule 54(b). See Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007); Beluga Holding, Ltd. v. Commerce Capital Corp., 212 F.3d 1190, 1200 & n.1 (11th Cir. 2000). The district court's decision was "final" because it ultimately disposed of an individual claim in a multiple-claim action, and the decision was a "judgment" because it was a decision upon a cognizable claim for relief. See Lloyd Noland Found., 483 F.3d at 777. Moreover, the district court did not abuse its discretion when it expressly determined that there was no just reason for delay in certifying its judgment as final and immediately appealable. See id. at 777-78.

8

We review de novo a district court's grant of a motion to dismiss, taking as true the facts as alleged.[6] Doe v. Pryor, 344 F.3d 1282, 1284 (11th Cir. 2003). Although a complaint attacked pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted

> does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citations, brackets, and footnote omitted).[7]

### III. DISCUSSION

---

[6]Here, because the district court made clear that it intended its Rule 59(e) order to supplement its original motion to dismiss order, see supra note 4, we review de novo both the original motion to dismiss order and the Rule 59(e) order. To the extent that Classroom suggests that we should review the Rule 59(e) order for an abuse of discretion, we reject that argument under the specific circumstances of this case, while recognizing and reaffirming our ordinary abuse-of-discretion review for Rule 59(e) orders. See, e.g., Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

[7]In reciting what it believed to be the applicable legal standard, the district court quoted Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), in which the Supreme Court stated that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S. Ct. at 101. However, in Twombly, decided after the district court's decision in this case, the Supreme Court expressly "retire[d]" that portion of Conley. Twombly, __ U.S. at __, 127 S. Ct. at 1969. Even if the district court applied an unduly strict Conley standard to Classroom's motion to dismiss, we need not address the question because Classroom's motion to dismiss was properly granted under both Conley and Twombly.

9

In order to establish an abuse of process claim under Alabama law, a plaintiff must show: (1) an ulterior purpose; (2) a wrongful use of process; and (3) malice. See Preskitt v. Lyons, 865 So. 2d 424, 430 (Ala. 2003); Willis v. Parker, 814 So. 2d 857, 865 (Ala. 2001); C.C. & J., Inc. v. Hagood, 711 So. 2d 947, 950 (Ala. 1998). Additionally, "abuse of process concerns the wrongful use of process after it has been issued." Hagood, 711 So. 2d at 950 (emphasis omitted).

In this case, the district court granted Classroom's motion to dismiss because, in the view of the district court, Draphix failed to "allege that Classroom engaged in any illicit or abusive activity after it filed this suit." In other words, the district court read Draphix's complaint as alleging only that the "process" Classroom wrongfully caused to be issued was Classroom's filing of the second federal action, and the district court determined that allegation failed to meet the Hagood requirement that process be wrongfully used after its issuance.

On appeal, Draphix insists that the district court incorrectly viewed the second federal action as the only "process" at issue. According to Draphix, in the context of two legal actions, the legal process should be evaluated as a whole, and while the state process was entirely legitimate, the second federal action constituted an act "after" the initial use of judicial process in state court and "demonstrate[s] an abuse of the judicial process." Draphix asserts that Alabama

10

law is clear on this "timing" question, but Draphix asks us to certify the question to the Alabama Supreme Court if we disagree. Additionally, Draphix contends that it has properly pled the other elements of abuse of process.

We need not address the "timing" question implicated by the district court's order, nor need we certify that question to the Alabama Supreme Court. Instead, assuming arguendo that the "timing" question resolves in Draphix's favor, and further assuming arguendo that Draphix has properly alleged malice and an ulterior purpose, we affirm the district court because Draphix has failed to allege (beyond its use of conclusory labels) wrongful use of process by Classroom.[8]

The essence of Draphix's abuse of process claim is that Classroom's second federal action—specifically, the third count of Classroom's second federal action—is "wrongful" because it seeks "to deny Draphix the continued use of the Teacher Direct mark even though the State Court declined to grant just such injunctive relief." According to Draphix, the state court "expressly allowed" Draphix's continued use of the "Teacher Direct" mark, subject to certain restrictions, and therefore, because Classroom's amended complaint in the second federal action seeks "compensatory damages and profits associated with

_____

[8]"[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied." Parks v. City of Warner Robins, 43 F.3d 609, 613 (11th Cir. 1995).

11

[Draphix's] use of the Teacher Direct mark since the jury verdict in the state court case," Classroom's filing of the second federal action constitutes abuse of process.

However, the Alabama Supreme Court has said that "[m]erely proceeding with a . . . complaint and later agreeing to dismiss the charge cannot constitute a wrongful use because . . . [t]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions." Willis, 814 So. 2d at 865 (quoting Hagood, 711 So. 2d at 951) (quotation marks and emphasis omitted; first omission in original). Unless a defendant "somehow acted outside the boundaries of legitimate procedure after the charge had been filed," there is no wrongful use. Id. (quoting Hagood, 711 So. 2d at 951-52) (quotation marks and emphasis omitted).

Here, it is undisputed that in the state court action, Classroom sued Draphix for unfair competition, fraud, rescission, and breach of contract. It is further undisputed that in the second federal action, Classroom sued Draphix for fraudulent procurement of a trademark registration, in violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120. Even accepting Draphix's contention that in the state court action, Classroom "invoked evidence" of the allegedly fraudulent declaration made by Draphix's CEO to the USPTO—which forms the basis of Classroom's Section 38 claim in the second federal action—there is still nothing

12

about Classroom's filing of the second federal action that is "wrongful" or improper. The state court action and the second federal action simply raise different causes of action and are thus different lawsuits, even if evidence presented in one may also be presented in the other.[9]

Moreover, we find unavailing Draphix's contention that Classroom has engaged in wrongful use of process by causing "regularly issued civil process that compels both the performance and forbearance of a prescribed act." According to Draphix, Classroom, on the one hand, caused process to issue in the state court action that permits Draphix some limited use of the "Teacher Direct" mark (through the state court's order), and on the other hand, Classroom in the second federal action seeks the issuance of process (a damages order) that will penalize

---

[9]This is, among other things, what distinguishes this case from Dunn v. Koehring Co., 546 F.2d 1193 (5th Cir. 1977). In Dunn, the defendant attempted to re-litigate "the same action" in Oklahoma federal court, despite the fact the same case already been fully and finally litigated in Mississippi state court. Dunn, 546 F.2d at 1196 (emphasis added). Our predecessor court, applying Mississippi law, concluded that the defendant's re-litigation of the same action constituted a misuse of civil process. Id. at 1199. Likewise, this is not a case in which the plaintiff obtained a judgment and sued to execute the judgment even after having the judgment already satisfied. Cf. Preskitt, 865 So. 2d at 430 (indicating that such a situation would constitute a wrongful use of process under Alabama law). And this is not a case in which the defendant allegedly expressly threatened to "flood" the courts with litigation—the implication being that such litigation would be meritless and "'inappropriate'"—which would be a wrongful use of process. Cf. Harmon v. Berry, 776 F.2d 259, 260 (11th Cir. 1985) (where pro se prisoner sent letter threatening to "flood the federal courts with litigation that defendants will have to defend unless [his] demands are met," state officials' counterclaim for abuse of process against the prisoner appeared to state a cause of action under Alabama law).

In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

Draphix for its use of the "Teacher Direct" mark. But it is axiomatic that merely because Draphix can engage in some use of the "Teacher Direct" mark under some laws, that does not necessarily mean that Draphix can engage in use of the "Teacher Direct" mark under other laws. Whether Draphix has a viable waiver, estoppel, or res judicata defense—in other words, whether Classroom should have asserted its Section 38 claim in the state court action or even in the first federal action—is another matter, but we need not address that question at this time. For today, we need only conclude that Draphix has failed to state a claim, and cannot state a claim, for abuse of process under Alabama law.

**AFFIRMED.**